**KRISTENSEN v. McGRATH, Attorney General et al.**

**No. 10044.**

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 7, 1949.

Decided Dec. 19, 1949.

Mr. David W. Louisell, Washington, D. C., with whom Mr. Samuel Spencer, Washington, D. C., was on the brief, for appellant.

Mr. Ross O'Donoghue, Assistant United States Attorney, Washington, D. C., with whom Messrs. George Morris Fay, United States Attorney, and John D. Lane, Assistant United States Attorney, Washington, D. C., were on the brief, for appellees.

Messrs. Jack Wasserman and Irving Jaffe, Washington, D. C., were on the brief on the behalf of Association of Immigration and Nationality Lawyers, amicus curiæ, urging reversal. Mr. Thomas M. Cooley, II, Washington, D. C., also entered an appearance on behalf of amicus curiz.

Before EDGERTON, McALLISTER, sitting by designation, and BAZELON, Circuit Judges.

BAZELON, Circuit Judge.

Appellant, a citizen of Denmark, entered the United States in August, 1939 under a sixty-day temporary visitor's visa to attend the New York World's Fair and to visit his relatives. Caught here by the outbreak of war in Europe, he secured two extensions of stay—each for six months. Before the expiration of the second six-months' period, he obtained employment, allegedly because of economic necessity, only to find that he had thereby violated the terms of his visa. A warrant of deportation issued against him on May 15, 1941, but was stayed because of the impossibility of travel during hostilities. Meanwhile, as an alien subject to a deportation order, he had filed Form DSS 301 ("Application by Alien for Relief from Military Service") on or about March 30, 1942 which resulted in his exemption from military service under the Selective Training and Service Act of 1940, as amended in 1941, 50 U.S.C.A.Appendix, § 301 et seq., (cited hereafter as STSA). He subsequently married an American citizen in 1944 and, in 1946, applied for suspension of deportation under the Immigration Act of 1917, as amended, 54 Stat. 672, 8 U.S.C.A. § 155(c), which authorizes the Attorney General, in certain circumstances, to suspend deportation of an alien who is not "ineligible to naturalization." The Board of Immigration Appeals denied his application, according to appellant's uncontroverted allegation in his complaint, "solely and exclusively" because appellant's exemption from military service had been secured at the price of a perpetual bar to naturalization. STSA § 3(a), 50 U.S.C.A.Appendix, § 303(a). After exhausting his administrative remedies, appellant sued in the District Court for a declaratory judgment and an injunction against the Attorney General and the Commissioner of Immigration, contending that he was not "residing in the United States" at the time he claimed exemption from service and therefore STSA § 3(a) is inapplicable to him. Appellant was not in custody at the time he brought suit, nor is he today. The District Court sustained defendant's motion to dismiss the complaint.

We think the District Court erred. The initial problem posed is not the availability of review but rather the method by which it may be sought. Is habeas corpus the exclusive remedy to test the legality of a de-

portation order, as appellee insists, or did the Declaratory Judgment and Administrative Procedure Acts add to the available methods of review?

█ Before the enactment of these measures, habeas corpus was the sole means of questioning the jurisdiction, fairness and conformity to statute of deportation proceedings.[1] But with the passage of the Declaratory Judgment Act, 48 Stat. 955, 28 U.S.C.A. §§ 2201, 2202, the courts were given the power to forestall injury by deciding justiciable cases or controversies at the earliest possible moment. Nor did the use of the declaratory judgment in immigration proceedings await the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq. In 1938 the Supreme Court sustained this court's decision in Perkins v. Elg, 1938, 69 App.D.C. 175, 180-1, 99 F.2d 408, 413-4, modified and affirmed, 1939, 307 U.S. 325, 349-50, 59 S.Ct. 884, 896, 83 L.Ed. 1320, 1333-4, and held the declaratory judgment procedure available to test the legality of the deportation of one claiming to be a citizen of the United States. The interpretation given the new procedure in the Perkins case accorded with the purpose of the Act which was, inter alia, "To enable public duties and powers to be established without the cumbersome and technical prerequisites of mandamus, certiorari, injunction, prohibition, or habeas corpus." Borchard, Declaratory Judgments 288 (2d Ed., 1941).

In view of the decision in Perkins v. Elg, supra, it may well be that even if the Administrative Procedure Act had not been enacted, declaratory judgment procedure would have been available after a deportation order had been entered against an alien. At any rate, the Elg case disposes of appellees' assertion that habeas corpus is the exclusive remedy in deportation cases. But § 10 of the Administrative Procedure Act, 60 Stat. 243, 5 U.S.C.A. §

1009 (1948 Supp.) makes it unnecessary to project that line of authority to the present case. That section makes judicial review available at the suit of

"(a) Any person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute * * *.

"(b) The form of proceeding for judicial review shall be any special statutory review proceeding relevant to the subject matter in any court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action (including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus) in any court of competent jurisdiction * * *.

"(c) Every agency action made reviewable by statute and every final agency action for which there is no other adequate remedy in any court shall be subject to judicial review * * *." (Emphasis supplied throughout.)

The only exceptions to this sweeping grant of review authority exist where "(1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion." 5 U.S.C.A. § 1009 (1948 Supp.). Neither exception is satisfied in this case. The immigration statute does not on its face preclude judicial review but merely states that "the decision of the Attorney General shall be final." 8 U.S. C.A. § 155(a). Such a statutory declaration of finality, which has not precluded review by way of habeas corpus for a considerable number of years, can hardly qualify now as a bar to review under this statute. United States ex rel. Trinler v. Carusi, 3 Cir., 1948, 166 F.2d 457, 461. The decision of the Attorney General is "final" in much the same sense as was the decision of local boards in selective service cases. The Supreme Court said of the finality accorded the latter, as might well be said of the

1. Nishimura Ekiu v. United States, 1892, 142 U.S. 651, 660, 12 S.Ct. 336, 338, 35 L.Ed. 1146, 1149; Kabadian v. Doak, 1933, 62 App.D.C. 114, 65 F.2d 202;

Poliszek v. Doak, 1932, 61 App.D.C. 64, 57 F.2d 430; Fafalios v. Doak, 1931, 60 App.D.C. 215, 50 F.2d 640.

statute here involved,[2] that it limited the scope of review to questions of conformity to governing statutes and regulations. "Congress chose not to give administrative action under the [Selective Service] Act the customary scope of judicial review which obtains under other statutes." Estep v. United States, 1946, 327 U.S. 114, 122, 66 S.Ct. 423, 428-429, 90 L.Ed. 567, 573. In addition, the legislators expressly recognized that "it has never been the policy of Congress to prevent the administration of its own statutes from being judicially confined to the scope of authority granted or to the objectives specified." Sen. Rep. No. 752, 79th Cong., 1st Sess. (1945), reprinted in Sen. Doc. No. 248, 79th Cong., 2d Sess., p. 212 (1946); H. R. Rep. No. 1980, 79th Cong., 2d Sess. (1946), id. at p. 275; see statement of Rep. Walter, 92 Cong. Rec. 5654 (1946).

Legislative discussion of the second exception, agency action "committed to agency discretion," similarly reveals no intention to bar the sort of review sought herein. For it was made clear to Congress that "questions of law properly presented" were not withdrawn from review. See House and Senate Committee Reports cited supra, reprinted in Sen. Doc. No. 248, 79th Cong., 2d Sess., pp. 212, 275 (1946); statement of Rep. Walter, 92 Con. Rec. 5654 (1946). And since there is no doubt that, if appellant were in custody, habeas corpus would lie to examine into the fairness of the proceedings and their conformity to the governing statutes, it seems obvious that no completely unreviewable discretion has been vested in the Attorney General, within the meaning of the "discretion" exception. United States ex rel. Trinler v. Carusi, 3 Cir., 1948, 166 F.2d 457, 461.

In essence, appellees' contention is that the legislative history of the Administrative Procedure Act evidences an intention to freeze the remedies previously used to test each agency's actions. Under this view, "*any* applicable form of legal action (including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus)" would by an unexplained transference process read "the hitherto applicable procedure" and hence codify the case law holding habeas corpus the exclusive remedy in deportation proceedings.[3] We believe, however, that the language of the statute is clear and that it is satisfied by an interpretation which permits the use of any one of the parenthetically enumerated remedies which fits the circumstances of the case then before the court.

Even if the plain meaning of the statutory language were to be ignored and the legislative history examined for a different content, the search would be fruitless. Only when a "special statutory review" exists under § 10(b) is the use of "any applicable form of legal action" restricted. But examination of the Senate and House reports makes it quite clear that § 10(b)'s reference to "special statutory review" includes only those "common-law forms *referred to and adopted by other statutes* as the appropriate mode of review." House and Senate Committee Reports, cited supra, reprinted in Sen. Doc. No. 248, 79th Cong., 2d Sess., pp. 212-13, 276 (1946). The immigration statute here relevant makes no reference to habeas corpus and hence, that remedy cannot fit within the category of "special statutory review."

The generally liberal attitude of Congress with regard to the declaratory judg-

---

2. The finality of the decision would seem to refer to the administrative process rather than to the Attorney General's interpretation of the statute under which he operates. As Mr. Justice Holmes pointed out in an exclusion case, Gegiow v. Uhl, 1914, 239 U.S. 3, 9, 36 S.Ct. 2, 3, 60 L.Ed. 114, 118, "The statute, by enumerating the conditions upon which the allowance to land may be denied, prohibits the denial in other cases. * * * The conclusiveness of the decisions of immigration officers under § 25 [34 Stat. 906] is conclusiveness upon matters of fact." See Stark v. Wickard, 1944, 321 U.S. 288, 310, 64 S.Ct. 559, 571, 88 L.Ed. 733, 748; Freund, Administrative Powers Over Persons and Property 240-1 (1928); Van Vleck, The Administrative Control of Aliens 153 (1932).

3. This view is expressed in the Attorney General's Manual on the Administrative Procedure Act 97 (1947).

ment procedure is revealed in the explanation of § 10(b) offered by the Senate Committee on the Judiciary: "Although the declaratory judgment 'proceeding has not yet been extensively used to bring Federal administrative action before the Federal courts, its potentialities are indicated by its wide use in other fields.' (Final Report, Attorney General's Committee, p. 81)." Senate Judiciary Committee Print, June 1945, reprinted in Sen. Doc. No. 248, 79th Cong., 2d Sess., p. 37 (1946). Even where a "special statutory review" existed, it was not contemplated that declaratory judgment procedure would be foreclosed. Thus, the House and Senate reports state, "Declaratory judgment procedure * * * may be operative *before* statutory forms of review are available and may be utilized to determine the validity or application of any agency action." Id. at 276, 212-13. Hence, its use where there is no "special statutory review" would follow *a fortiori.*

■ Our examination of the legislative history brings us to the same conclusion as that reached by the Third Circuit in the Trinler case, supra. We hold that the Administrative Procedure Act's judicial review section was not intended to perpetuate preexisting rigidities in the use of extraordinary legal remedies but rather to simplify and make more flexible the avenues to judicial relief.[4] Thus viewed, appellant's suit for a declaratory judgment is well taken if he can prove the existence of a justiciable case or controversy.

Our decision in Kaminer v. Clark, 1949, 85 U.S.App.D.C. ——, 177 F.2d 51, 52, does not conflict with anything here decided. In that case, Kaminer sought a declaratory judgment in this district although he was already in custody pursuant to a deportation order in the Southern District of New York. We ruled that "An action for declaratory judgment cannot be substituted

for habeas corpus so as to give jurisdiction to a district other than that in which the applicant is confined or restrained." In the course of exercising our discretion to deny declaratory relief in that case, nothing was said about its availability in a proper case. Here, declaratory relief is appropriate and since appellant is not in custody in another district, the Kaminer rule is necessarily inapplicable.

That this is a case ripe for judicial cognizance is not seriously challenged by the appellees. All that remains for appellant to do is either to depart voluntarily or to go into custody for deportation. To compel him to go into custody before he can have his rights determined would be to defer to formalism and order the performance of a useless act, an act which may require him to sacrifice his possessions in preparation for leaving the country. As Mr. Justice Douglas pointed out in Estep v. United States, 1946, 327 U.S. 114, 125, 66 S.Ct. 423, 428-429, 90 L.Ed. 567, 574, where the lower court had refused to permit Estep to plead the draft board's lack of jurisdiction over him in defense to a prosecution for failure to report for induction, if habeas corpus were the only remedy available to defendant, it might result in "sending men to jail today when it was apparent that they would have to be released tomorrow." It is true that there are decisions of this court which state that a petitioner in a deportation case would have to enter custody in order to have his rights determined by habeas corpus. See, e. g., Fafalios v. Doak, 1931, 60 App.D.C. 215, 50 F.2d 640. But those cases were decided before the enactment of either the Declaratory Judgment Act or the Administrative Procedure Act. In the only post-Declaratory Judgment Act case called to our attention, Perkins v. Elg, supra, this court did not remit petitioner to the habeas corpus remedy but instead granted declaratory relief, which the Supreme Court sus-

---

4. The Sixth Circuit came to the same general conclusion in Lincoln Electric Co. v. Commissioner of Internal Revenue, 1947, 162 F.2d 379, 382. To the same general effect are United States ex rel. Cammarata v. Miller, D.C.S.D.N.Y.1948, 79 F.Supp. 643, 646; Scholnick v. Clark, D.C.D.C.1948, 81 F.Supp. 298, 300;

Unger v. United States, D.C.E.D.Ill.1948, 79 F.Supp. 281, 286. Cases stating that the Administrative Procedure Act is merely declaratory of the preexisting law of judicial review are Valenti v. Clark, D.C.D.C.1949, 83 F.Supp. 167; Olin Industries v. N. L. R. B., D.C.Mass.1947, 72 F.Supp. 225.

tained. Determination of appellant's rights at this juncture detracts not one whit from the administrative process for the Attorney General has already reached his "final" decision and refused to reconsider it.[5] Instead, it satisfies the underlying purpose of the Declaratory Judgment Act which is to decide cases in their incipiency before the law's coercive machinery is brought into play. At the same time, it reinforces the ever-growing concern manifested by the courts for personal liberty and its protection. See Bridges v. Wixon, 1945, 326 U.S. 135, 148, 65 S.Ct. 1443, 1449, 89 L.Ed. 2103, 2111-2.

The only substantive issue before the District Court concerned appellant's contention that the Board of Immigration Appeals ruled incorrectly when it held him "ineligible to naturalization" *solely* because he filed a claim of exemption from military service under STSA § 3(a). The applicable portion of § 3(a) reads:

"Except as otherwise provided in this Act * * *, every male citizen of the United States, and *every other male person residing in the United States* * * * shall be liable for training and service in the land or naval forces of the United States: *Provided,* That any citizen or subject of a neutral country shall be relieved from liability for training and service under this Act * * * if, prior to his induction into the land or naval forces, he has made application to be relieved from such liability in the manner prescribed by and in accordance with rules and regulations prescribed by the President, but any person who makes such application shall thereafter be debarred from becoming a citizen of the United States." 50 U.S.C.A. Appendix, § 303(a).[6]

To support his request for relief, appellant urges that he was not "residing in the United States" within the meaning of § 3(a) at the time he filed the exemption form, was therefore never liable for military service, and hence his claim of exemption does not bar him from naturalization.

It is axiomatic that residence is not a term of fixed legal definition but takes on shades of meaning according to the statutory framework in which it is found. Beale, Residence and Domicil, 4 Iowa L. Bull. 3, 4 (1918); Raymond v. Leishman, 1914, 243 Pa. 64, 89 A. 791, L.R.A.1915A, 400, Ann.Cas.1915C, 780. And like domicile, with which it is sometimes said to be synonymous, it is a question to be determined in each case by examination of a party's intention, acts, declarations, the nature of his stay, etc. Petition of Herschman, 7 Cir., 1947, 163 F.2d 865, 867; 1 Beale, Conflict of Laws 109 (1935); 8 Mertens, Law of Federal Income Taxation 252 (1942). But wherever used, the term has an irreducible minimum of meaning. As we shall indicate, it requires at least an

---

5. Decisions cited by appellees in which this court refused to permit use of the declaratory judgment procedure to interfere with the administrative process are therefore inapplicable. Such cases are Miles Laboratories v. F. T. C., 1944, 78 U.S.App.D.C. 326, 328, 140 F.2d 683, 685; Utah Fuel Co. v. National Bituminous Coal Comm., 1938, 69 App.D.C. 333, 338, 101 F.2d 426, 431; Hearst Radio Corp. v. F. C. C., D.C.D.C.1947, 73 F.Supp. 308, 309. Other instances where this court exercised its discretion to deny declaratory relief are Di Benedetto v. Morgenthau, 1945, 80 U.S.App. D.C. 34, 35, 148 F.2d 223, 225 (court asked to declare law applicable to a proceeding over which the Court of Claims had complete jurisdiction under the Tucker Act); Clark v. Memolo, 1949, — U.S.App.D.C. —, 174 F.2d 978 (court asked to vacate sentence already handed down by a District Court in another district).

6. The amicus curiae brief filed herein and appellant in his reply brief state that Denmark was not a neutral, citing Military Government Law No. 3, Office of Military Government for Germany (U. S.), Title 23, enacted November 15, 1944, and conclude therefrom that appellant was not covered by STSA § 3(a). It appears, however, that the Selective Service Board classed Denmark as a neutral within this Act beginning March 16, 1942. Local Board Memorandum No. 112. No conclusive determination of Denmark's status during the period pertinent to this case has been made by the State Department. But since we decide the case on other grounds, consideration of this issue is unnecessary.

abode which is in some degree permanent and is the result of choice. And where aliens are concerned, absent unusual circumstances, it also requires the consent of the sovereign. Appellant's continued presence here was in no sense permanent, was not the result of choice, and was under the express dissent of the sovereign.

■ Appellant's permit to enter this country as a "temporary visitor" was in the nature of a conditional grant from the sovereign,[7] subject to revocation the instant he violated the designated status. Schacht v. Young, 5 Cir., 1947, 164 F.2d 882, 883. In Leonhard v. Eley, 10 Cir., 1945, 151 F.2d 409, 410, the court took note of the conditional nature of the permission in a case involving STSA § 3(a) when it said that "Aliens residing in the United States, *so long as they are permitted by the government to remain therein*" (emphasis supplied) are entitled to the protection of the sovereign and hence are liable for military service. The inference to be drawn, although not made explicit by the court, is that without such permission to remain, there would be no liability to service under this Act. Thus, when appellant violated his visitor's status by accepting employment and a deportation warrant issued against him, any prospect of his stay developing what it lacked, the limited degree of permanence required for residence, was foreclosed to him. See Beal, Residence and Domicil, 4 Iowa L. Bull. 3 (1918).

This view accords with the way in which residence is generally treated under the immigration laws. The nature of an alien's stay in this country under those statutes takes its meaning from the terms of the original permission to enter and its continued recognition by the sovereign. Thus, time spent here illegally, as after the expiration or revocation of a temporary visa, is not credited to the five year residence requirement prerequisite to naturalization. United States v. Kreticos, 1930, 59 App. D.C. 305, 307, 40 F.2d 1020, 1022; In re Wieg, D.C.S.D.Tex.1929, 30 F.2d 418; Ex parte Domenici, D.Mass.1925, 8 F.2d 366, 367. The reasoning of Mr. Justice Holmes in Kaplan v. Tod, 1925, 267 U.S. 228, 230, 45 S.Ct. 257, 69 L.Ed. 585, 587, which dealt with a child within a class barred from entry by statute, illustrates that an alien's physical presence alone is not conclusive of residence, "until she legally landed [appellant] 'could not have dwelt within the United States' [within the meaning of the Act] * * *. When her prison bounds were enlarged by committing her to the custody of the Hebrew Society, the nature of her stay within the territory was not changed. She was still in theory of law at the boundary line and had gained no foothold in the United States."

In addition to the fact that the sovereign had withdrawn its consent by issuing a deportation order, there is the additional circumstance that appellant's continued presence in this country between the time of the order and his claim of exemption was the result of the outbreak of war in Europe. Presence in a foreign land because of war, and the attendant inability to return to one's own country, does not possess the volitional element which is basic to residence. Thus, as Judge Learned Hand pointed out, "there is substantial unanimity that, however construed in a statute, residence involves some choice * * * and that presence elsewhere through constraint has no effect upon it." Neuberger v. United States, 2 Cir., 1926, 13 F.2d 541, 542. Cf. Millett v. Pearson, 1919, 143 Minn. 187, 173 N.W. 411, 412, 5 A.L.R. 256.

Clearly, at the time he registered and subsequently filed Form DSS 301, appellant

---

7. Nishimura Ekiu v. United States, 1892, 142 U.S. 651, 659, 12 S.Ct. 336, 338, 35 L.Ed. 1146, 1149; Johannessen v. United States, 1912, 225 U.S. 227, 240, 32 S.Ct. 613, 616, 56 L.Ed. 1066, 1071; Lai To Hong v. Ebey, 7 Cir., 1928, 25 F.2d 714, 716. See In re Gaffney's Estate, 1931, 141 Misc. 453, 252 N.Y.S. 649, for a holding that a "temporary visitor" was not an "inhabitant" under a state law entitling only "inhabitants" to letters of administration. The court held the meaning of "inhabitant" to be "co-ordinate with that of resident." Id, 252 N.Y.S. at page 653.

had been deprived of the volition necessary to residence because proceedings against him had been completed and he was awaiting the purely ministerial act of deportation. An alien similarly situated was held not to be a "resident" for the purpose of taxation in Florica Constantinescu v. Commissioner of Internal Revenue, 1948, 11 T.C. 36. In that case, the petitioner, a Roumanian citizen residing in France, had originally been admitted to the United States in 1939 under a temporary visitor's visa. During the entire taxable year involved, she was the subject of a deportation order whose execution had been stayed because of war conditions. Under such circumstances, the court concluded that although "during all of the time here in question she was physically present in the United States, * * * mere physical presence in a foreign country, even though it is considerably prolonged, is not of itself sufficient to establish residence." Id. 11 T.C. at pages 42-43. The Tax Court's reasoning is persuasive because of the similarity in origin of the obligation to pay taxes and the obligation of military service. Both inhere in the allegiance owed to a protecting sovereign.

Appellant's lack of choice is further illustrated by the fact that even voluntary departure pursuant to the deportation order was unavailable to him because Denmark was under German occupation. Under similar facts, a person who left the United States to travel in Germany and was caught there by the course of war, was held not to be "resident within" Germany within the meaning of the Trading with the Enemy Act, 50 U.S.C.A.Appendix, § 1 et seq. McGrath v. Zander, 1949, 85 U.S.App.D.C.

—, 177 F.2d 649; Stadtmuller v. Miller, 2 Cir., 1926, 11 F.2d 732, 45 A.L.R. 895.

In all the cases involving liability for military service under § 3(a) of the Selective Training and Service Act which have come to our attention, the aliens held to be "residing in the United States" had lived in this country for long periods of time, were not here under temporary visitor's visas, and no deportation orders were involved.[8] The only case holding that a "temporary visitor" is "residing in the United States" within the terms of § 3(a) is Benzian v. Godwin, 2 Cir., 1948, 168 F.2d 952, certiorari denied 1948, 335 U.S. 886, 69 S.Ct. 235, in which no deportation order had been issued. Judge Frank, speaking for the court, held that when Congress amended STSA § 3(a) in 1941 to make liable for service "all male persons residing in the United States,"[9] it adopted the Attorney General's construction of that phrase as previously used in § 2 in connection with persons subject to *registration*. That construction had been to the effect that for *registration* purposes, persons here under temporary visas were "residing in the United States." 39 Op.Atty.Gen. 504 (Oct. 11, 1940). Without examining into the merits of the residence question, the court in the Benzian case deferred to the rule of statutory construction that Congressional reenactment of an administratively interpreted statute evidences Congressional approval of that interpretation, and extended the rule to use of the old phrase in a new context. That rule, however, had its origin in situations where a statutory provision had been interpreted by an agency over a long period of years and Congress then re-

8. See, e. g., Cervantes v. United States, 9 Cir., 1947, 163 F.2d 294; United States v. Lamothe, 2 Cir., 1945, 152 F.2d 340; Albany v. United States, 6 Cir., 1945, 152 F.2d 266; Leonhard v. Eley, 10 Cir., 1945, 151 F.2d 409; cf. In re Martinez, D.C.W.D.Pa.1947, 73 F.Supp. 101; Petition of Bartenbach, D.C.W.D.Pa.1949, 82 F.Supp. 649 (entered for *permanent* residence in 1940). In Ex Parte Asit Ranjan Ghosh, D.C.S.D.Cal.1944, 58 F. Supp. 851, 854, one who entered in 1940

for the purpose of university study and was ordered inducted in 1944 was held not to be "residing in the United States" and, therefore, not liable for military service.

9. Originally, the Act made all "male persons residing in the United States" subject to registration but only those who had declared their intention of becoming citizens were liable to service.

enacted the same provision.[10] In contrast. as already indicated, we are confronted with a transposition of a phrase from one context in the statute to another, with no direct evidence whatsoever that Congress was aware of the Attorney General's construction of the phrase in the first context.[11] As the Supreme Court said in Girouard v. United States, 1946, 328 U.S. 61, 69-70, 66 S.Ct. 826, 830, 90 L.Ed. 1084, 1090, where it overruled its own construction of a statute which had come to the attention of Congress several times and the construed portion had been reenacted, "It is at best treacherous to find in Congressional silence alone the adoption of a controlling rule of law. We do not think under the circumstances of this legislative history that we can properly place on the shoulders of Congress the burden of the Court's own error. The history of the 1940 Act is at most equivocal. It contains no affirmative recognition of the rule of [these] * * * cases. The silence of Congress and its inaction are as consistent with a desire to leave the problem fluid as they are with an adoption by silence of the rule of those cases." See concurring opinion of Justice Rutledge in Cleveland v. United States, 1946, 329 U.S. 14, 22-24, 67 S.Ct. 13, 17-18, 91 L.Ed. 12, 18-19. Congressional reenactment without express consideration or reference cannot give controlling weight to an originally erroneous administrative interpretation.[12] The

Attorney General's opinion relied on in the Benzian case cites us to no authority in support of its conclusion that a "temporary visitor" is necessarily "residing in the United States."

We are unable to agree that Congressional use of a term having as rich a lay and legal meaning as "residing" was intended to include all "temporary visitors," regardless of the surrounding circumstances, or their own attitude and that of our government toward their presence here. Cf. Mertens, op. cit. supra at 249-50. If Congress had meant to make liable to military service "all male persons in the United States," we do not think that it would have inserted the requirement that such persons be "residing."

■ We hold that, absent any showing of acts or declarations indicating an intention to remain at the time the form was filed, the immigration authorities erroneously construed "residing in the United States" when they held it applicable to an alien in this country under a temporary visitor's visa whose deportation had been ordered and then stayed because of war. Since, under the facts taken to be admitted by the pleadings, appellant was not a resident at the time he filed Form DSS 301, the claim of exemption was without effect and he was not "ineligible to naturalization" solely because of such filing.[13] Of course, our conclusion does not obviate the

---

10. Crane v. Commissioner of Internal Revenue, 1947, 331 U.S. 1, 8, 67 S.Ct. 1047, 1051-2, 91 L.Ed. 1301, 1307; see Crawford, Statutory Construction 439 (1940).

11. No reference is made to the Attorney General's opinion in the Conference Report of the House and Senate on the 1941 amendment, H.R.Rep.No.1554, 77th Cong., 1st Sess. (1941).

12. United States v. Missouri Pac. R. Co., 1927, 278 U.S. 269, 280, 49 S.Ct. 133, 137, 73 L.Ed. 322, 377; Hanson v. Landy, D.C.Minn.1938, 24 F.Supp. 535, 540; Allen v. Long, Commissioner of Corp. & Taxation, 1930, 272 Mass. 502, 172 N.E. 643, 70 A.L.R. 1299; Cf. Manhattan General Equipment Co. v. Commissioner of Internal Revenue, 1936, 297 U.S. 129, 134, 56 S.Ct. 397, 400, 80 L.Ed. 528, 531.

13. The government suggests that appellant, by filing Form DSS 301, was estopped from later challenging its validity as applied to him. But obviously, as Judge Frank pointed out in the Benzian case, supra, 168 F.2d at page 956, "appellant's status as resident or non-resident was unaffected by the filing of that form." Nor does the fact that a procedure for determination of residence (not available to appellant) had been established by regulation in February, 1942 (pursuant to 50 U.S.C.A.Appendix, § 305(a) ) alter the situation; that procedure was available only to those aliens who invoked it within three months after their entry. Since appellant had entered in August, 1939 and did not claim exemption until about March 30, 1942, which was thirty-

requirement that appellant otherwise comply with the naturalization statutes.

The judgment below is reversed and the cause remanded to the District Court for appropriate action in accordance with this opinion.

Reversed.

one months rather than three months after entry, he could not then get any administrative interpretation. Not until 1945 was any provision made for extension of the three-month limitation. Moreover, the regulations contain nothing to aid in the determination of whether a person in appellant's position was "residing in the United States." They merely specify that persons in certain categories are not to be deemed "residing," leaving the status of other persons to be fixed by means of an "Application for Determination of Residence" under Regulation 611.13(7), Title 32, Code Fed. Regs. § 611.13 (1943 Supp.). But, as already indicated, such a determination was unavailable to appellant at the time he filed Form DSS 301.