**MACHADO v. McGRATH, Atty. Gen., et al.**

No. 10445.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 15, 1951.

Nov. 23, 1951.

Writ of Certiorari Denied March 3, 1952.

See 72 S.Ct. 557.

· Jack Wasserman, Washington, D. C., for appellant. Irving Jaffe, Washington, D. C., also entered an appearance for appellant.

Joseph M. Howard, Asst. U. S. Atty., Washington, D. C., with whom George Morris Fay, U. S. Atty. at the time the brief was filed, and Ross O'Donoghue and Joseph F. Goetten, Asst. U.S. Attys., Wash·

ington, D. C., were on the brief, for appellees. Charles M. Irelan, appointed U. S. Atty. subsequent to the argument in this case, and L. Clark Ewing, Asst. U. S. Atty., Washington, D. C., also entered appearances for appellees.

Before PROCTOR, BAZELON and FAHY, Circuit Judges.

BAZELON, Circuit Judge.

On January 22, 1947, the Commissioner of Immigration and Naturalization issued a warrant of arrest for deportation charging that appellant, a citizen of Uruguay, had remained in this country longer than permitted by law. Following appropriate administrative proceedings, appellant was ordered to leave the United States. He thereupon brought this action in the District Court, seeking a declaration that he is admissible to the United States for permanent residence and citizenship and is eligible for suspension of deportation. This appeal challenges the District Court's dismissal of the complaint for failure to state a claim upon which relief can be granted.

The pertinent allegations are simple. Appellant entered the United States on March 14, 1944, for a period of one year as a business visitor. On or about June 12, 1944, he registered under the Selective Training and Service Act of 1940.[1] When notified of his classification as 1–A, he executed DSS Form 301 on or about July 14, 1944. This relieved him as a neutral alien from military training and service, but, un-

der § 3(a) of the Act, it also debarred him from becoming a citizen of the United States. Within a few months, appellant married and decided that he wished to become a United States citizen. Then, during the Battle of the Bulge, he requested permission to withdraw his claim of exemption so that he might enter the United States Army. Permission was refused.[2] Subsequently, when Uruguay entered the war, appellant was reclassified 1–A, called for induction, and rejected because of physical unfitness.[3] From all that appears in the complaint, the execution of DSS Form 301 and the bar imposed by § 3(a) of the Act are all that stand between appellant and eligibility to remain in the United States.

Appellant raises several issues on this appeal but only two warrant extended consideration.

The first is an attempt to bring this case within the rule of McGrath v. Kristensen, 1950, 340 U.S. 162, 71 S.Ct. 224, 226, 95 L.Ed. 173, where a temporary visitor was held not to be "residing in the United States", and hence not subject either to selective service or to the citzenship bar attending a claim of exemption from it. Appellant's position is entirely different, however, because, unlike Kristensen,[4] his status was governed by regulations in force at the time he claimed his exemption.[5]

Those regulations made Machado a "male person residing in the United States" within the meaning of the Act because he had not filed an Application for Determina-

1. 54 Stat. 885 (1940), as amended, 50 U.S.C.App. § 301 et seq. (1946), now 50 U.S.C.A.Appendix, § 451 et seq., hereafter cited as the Act.

2. In his brief, appellant does not argue that his request for withdrawal of DSS Form 301 should operate to cancel the disability he incurred by filing it. Nor does the complaint allege that Machado followed the correct procedure in requesting withdrawal of the form. Local Board Memorandum No. 112, in effect throughout the period involved herein, provided that requests for induction by aliens who had filed DSS Form 301 should be made in an Application for Voluntary Induction (Form 165). Draft boards were instructed not to surrender DSS Form 301. They were advised that

the effect to be given Form 301 when followed by Form 165 was a matter to be determined by the courts. A notation to this effect was to be typed on the face of each Form 165 prior to the applicant's signature. Local Board Memo. No. 112, as amended Dec. 20, 1943, Part V, pg. 3.

3. Local boards were instructed to disregard DSS Form 301 for purposes of induction after the alien's country had entered the war. Local Board Memo. No. 112, as amended Dec. 20, 1943, Part V, pg. 2.

4. 1950, 340 U.S. 162, 172–176, 71 S.Ct. 224, 95 L.Ed. 173.

5. For these regulations see id. at 173–4.

tion of Status within three months of his arrival. Appellant argues, however, that regulations which, in his case, make a mere temporary visitor of four months a resident cannot be valid. We disagree. The regulations do not arbitrarily state that anyone who remains here longer than three months shall be deemed a resident regardless of the purpose, duration or circumstances of his presence. They merely require that one who comes to this country in time of war must act within three months to have his status as a resident determined. If the required application is filed, the alien will have his case judged by the applicable administrative and judicial standards. See Kristensen v. McGrath, 1949, 86 U.S.App. D.C. 48, 53–56, 179 F.2d 796, 801–804. But if it is not filed then, his status as a resident is in effect taken as confessed. We think it clear that the President, in the interest of sound administration of selective service, has the power to set some time limit within which claims of non-residence must be made. Such a procedure is not unusual.[6] And a period of three months is not unreasonable in a context such as this.

The second issue which we consider important is raised by appellant's contention that his execution of DSS Form 301 was a mistake and hence does not warrant his

being debarred from citizenship. Appellees seek to meet this contention by asserting that the facts relied on to constitute mistake have not been set out in the complaint with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.[7]

What the complaint does allege is that at the time plaintiff signed DSS Form 301 "he was not able to fully understand" its nature; that he was not able to read or write the English language "with full comprehension"; that he signed the form upon the advice of a clerk of his local draft board; that the form was not explained to him; and that in signing it, he thought he was claiming exemption on the ground of non-residence, not on the ground of neutral alienage.

For purposes of a motion to dismiss, a complaint should be viewed in the light most favorable to the plaintiff. Complaints should be tested by their substance and by the reasonable inferences which can be drawn from them rather than by the nicety of their expression.[8] These principles are especially important when, as in the present case, the sufficiency of the allegations is argued for the first time on appeal.[9] Tested by these standards, we believe that the complaint, although lacking

---

6. Failure to comply with rules and regulations which courts and administrative bodies must enact to assure effective handling of their business may result in a party being taken to have confessed a position. Thus, for example, the Interstate Commerce Commission has enacted regulations requiring that protests against proposed tariffs must ordinarily be filed at least ten days in advance of the tariff's effective date, 49 Code Fed. Regs. § 1.42(b) (1949); and that answers must be filed within twenty days following service of the complaint answered, id. at § 1.35(c). Rule 9(b) of the Rules of the United States District Court for the District of Columbia authorizes the court to treat motions as conceded unless the opposing party files opposing points and authorities within five days. Special Rule 5 of the United States Court of Appeals for the District of Columbia Circuit provides that review of orders or decisions of administrative agencies of the District of Columbia shall be sought by petition for

allowance of an appeal filed within thirty days after the order or decision is made, unless another time is specified by statute.

7. Rule 9(b), 28 U.S.C., reads, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

8. Indeed, Rule 8(f) commands that "All pleadings shall be so construed as to do substantial justice." Cf. United States v. Sinclair Refining Co., 10 Cir., 1942, 126 F.2d 827, 830–831; Levenson v. B. & M. Furniture Co., 2 Cir., 1941, 120 F.2d 1009; see Leimer v. State Mut. Life Assur. Co. of Worcester, 8 Cir., 1940, 108 F.2d 302, 305–306.

9. Machado had no opportunity to clarify his complaint below, as in response to a motion for a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure. The motion was dis-

in clarity, states a cause of action. It is entirely reasonable to read the complaint as alleging that appellant was led by the draft board clerk to believe that he was claiming exemption as a non-resident alien rather than as a resident neutral alien to whom the citzenship bar applied.

So viewed, the allegations bring this complaint within the rule of Moser v. United States, 1951, 341 U.S. 41, 71 S.Ct. 553, 556, 95 L.Ed. 729. In that case, Moser had asserted a right to exemption without debarment from citizenship. Acting on the advice of Selective Service and State Department officials he signed a Revised DSS Form 301. Later the Government argued that the execution of this form barred him from citizenship. In rejecting this argument, the Supreme Court said: "[Moser] was led to believe that he would not thereby lose his rights to citizenship. If he had known otherwise he would not have claimed exemption. In justifiable reliance on this advice he signed the papers sent to him by the Legation." [10]

As in the Moser case, we believe Machado was entitled to have the "opportunity to make an intelligent election" between being subject to the draft on the one hand, and being exempt but losing the right to become a citizen on the other. See Johnson v. United States, 1943, 318 U.S.

189, 197, 63 S.Ct. 549, 87 L.Ed. 704.[11] The sound reason for affording such an opportunity arises in good part from our conviction that American citizenship being a most precious right, its denial should not be allowed to rest upon a doubtful premise. Upon similar reasoning, it should not be allowed in this case to rest upon the narrower view of the allegations of the complaint. We hold that appellant is entitled to a responsive pleading on the issue of mistake.

■ Two other points are raised by appellant which can be disposed of summarily. The citizenship bar of § 3(a) of the Act did not expire when the Act expired in 1947. This is made clear by the action of Congress in 1945 when the basic Immigration Act of 1924 was amended.[12] In that year, Congress included within the category of persons ineligible for citizenship those who had debarred themselves under § 3(a) of the Selective Training and Service Act. See discussion of this question in Benzian v. Godwin, 2 Cir., 1948, 168 F.2d 952, 956–957, certiorari denied (1948), 335 U.S. 886, 69 S.Ct. 235, 93 L.Ed. 425.

■ Nor do we believe that Uruguay's entrance into the war after Machado had executed DSS Form 301 renders § 3(a) of the Act inapplicable to him. The language of the Selective Service Act is clear.[13]

missed for lack of jurisdiction before we had held in Kristensen v. McGrath, 1949, 86 U.S.App.D.C. 48, 179 F.2d 796, that jurisdiction is present in suits of this kind under the Declaratory Judgment Act, 28 U.S.C. § 2201 (Supp.1950), and the Administrative Procedure Act, 60 Stat. 237 (1946), as amended, 5 U.S.C. A. § 1001 et seq. The order dismissing the action also contained a general statement that the complaint failed to state a cause of action upon which relief may be granted. Joint Appendix, p. 23.

10. Moser v. United States, 1951, 341 U.S. 41, 46, 71 S.Ct. 553, 95 L.Ed. 729. It should be noted that the complaint in the instant case was drawn almost three years before the Supreme Court decided the Moser case. Cf. Staten Island Hygeia Ice & Cold Storage Co. v. United States, 2 Cir., 1936, 85 F.2d 68, 71–72; see Arikawa v. Acheson, D.C.S.D.Cal. 1949, 83 F.Supp. 473, 475; Petition of

Ajlouny, D.C.E.D.Mich.1948, 77 F.Supp. 327, 330.

11. Savorgnan v. United States, 1950, 338 U.S. 491, 70 S.Ct. 292, 94 L.Ed. 287, does not compel a different result. In that case petitioner was aware that she was acquiring Italian citizenship, but she was not aware that one result of her action might be the loss of American citizenship. She did not contend that her ignorance of the law was in any way due to this Government. The facts as stated in Mackenzie v. Hare, 1915, 239 U.S. 299, 306, 36 S.Ct. 106, 60 L. Ed. 297, far from disclosing reliance on misleading advice of a Government agent, do not even show that petitioner was unaware that she was giving up her citizenship by marrying a foreign national.

12. 43 Stat. 153, 168 (1924), as amended, 8 U.S.C.A. § 224(c).

13. "Except as otherwise provided in this Act * * * every male citizen of the

It imposes liability for military training and service on every male person residing in the United States. Citizens and subjects of a neutral country who apply for relief prior. to induction need not serve ·in our armed services. But any person who asks for this relief is thereafter debarred from becoming a citizen of the United States. Congress nowhere provided that the subsequent entrance of a neutral into the war, either with or without reclassification of its aliens, would remove the bar to citizenship previously incurred. Petition of Fatoullah, D.C.E.D.N.Y.1948, 76 F.Supp. 499; see In re Martinez, D.C.W.D.Pa.1947, 73 F.Supp. 101.[14]

The judgment below is reversed and the cause remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

United States, and every other male person residing in the United States * * * shall be liable for training, and service in the land or naval forces of the United States: *Provided*, That any citizen or subject of a neutral country shall be relieved from liability for training and service under this Act * * * if, prior to his induction into the land or naval forces, he has made application to be relieved from such liability in the manner prescribed by and in accordance with rules and regulations prescribed by the President, but any person who makes such application shall thereafter be debarred from becoming a citizen of the United States". 54 Stat. 885 (1940), as amended, 50 U.S.C.A.App. § 303(a) (1946).

14. Petition of Ajlouny, D.C.E.D.Mich. 1948, 77 F.Supp. 327, cited by appellant, was decided on the theory that Ajlouny's native country, Palestine, was not a neutral at the time petitioner executed DSS Form 301. Hence the bar, which runs only against citizens or subjects of a neutral country, could not have applied to him.