Anthony J. LoBUE, et al., Appellees,

v.

Warren CHRISTOPHER, Secretary, U.S. Department of State, et al., Appellants.

Nos. 95–5293, 95–5315.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 17, 1996.

Decided April 30, 1996.

Rehearing Denied July 1, 1996.

Douglas N. Letter, Litigation Counsel, U.S. Department of Justice, with whom John C. Keeney, Jr., Acting Assistant Attorney General, Eric H. Holder, Jr., United States Attorney and Scott R. McIntosh, Washington, DC, were on the brief, argued the cause for appellants. Joseph D. Wilson, Attorney, U.S. Department of Justice, entered an appearance.

Gregory B. Craig, with whom John T. Parry, James W. Shannon, Jr., and Matthew J. Herrington, Washington, DC, were on the brief, argued the cause for appellees. Michael Wolf was on the brief for appellee Mauricio M. O'Brien.

Before: WILLIAMS, GINSBURG and SENTELLE, Circuit Judges.

Opinion for the court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

Plaintiffs Anthony LoBue and Thomas Kulekowskis are wanted by Canada to stand trial for crimes allegedly committed there. They brought suit in the district court for the District of Columbia challenging the constitutionality of the federal extradition statutes, 18 U.S.C. §§ 3184, 3186, and seeking declara-

tory relief and an injunction barring the United States from carrying out their extra-dition.[1] Citing the plenary discretion the law affords the Secretary of State to refuse to sign surrender warrants even after a judge or magistrate has found the evidence sufficient to justify surrender, the district court declared the law a violation of the constitutional separation of powers and issued the requested injunction. *Lobue v. Christopher*, 893 F.Supp. 65 (D.D.C.1995). Soon after the merits judgment the district court reversed its prior denial of class certification, and certified as plaintiffs a class of "all persons who presently are or in the future will be under threat of extradition" under the statutes. *LoBue v. Christopher*, No. 95–1097 (D.D.C. Sept. 15, 1995) (order).

Because the named plaintiffs are in the constructive custody of the U.S. Marshal for the Northern District of Illinois, they can challenge the statute through a petition for habeas corpus there. (In fact, they have filed a habeas petition.) Under established circuit law the District of Columbia district court therefore lacked subject matter jurisdiction to hear their declaratory judgment action. Accordingly, we vacate the district court's judgment and remand for it to dismiss the case.

\* \* \*

The government challenged plaintiffs' suit on grounds of comity, since the plaintiffs had earlier filed a habeas petition raising the same issues in the Northern District of Illinois. But comity is not really the issue; the key to plaintiffs' inability to pursue a suit here is jurisdictional, and it rests merely on the availability—not the actual seeking—of habeas relief elsewhere. We must, of course, examine not only our own jurisdiction but also that of the court below, regardless of whether the parties have neglected the issue, addressed it only obliquely, or even tried to waive it. See, e.g., *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). We thus begin, and end, with the question of the district court's jurisdiction.

In *Kaminer v. Clark*, 177 F.2d 51 (D.C.Cir. 1949), we ruled that the availability of a habeas remedy in another district ousted us of jurisdiction over an alien's effort to pose a constitutional attack on his pending deportation by means of a suit for declaratory judgment:

> While this suit is for a declaratory judgment, it is substantially similar to an application for a writ of habeas corpus, because, in addition to the claim of unconstitutionality, it complains that the appellant's detention without a hearing is unlawful. Habeas corpus would lie only in the Southern District of New York, where the appellant was detained on Ellis Island at the time this suit was instituted. An action for declaratory judgment cannot be substituted for habeas corpus so as to give jurisdiction to a district other than that in which the applicant is confined or restrained.... The District Court properly dismissed the action, because it lacked jurisdiction.

*Id.* at 52. For the principle that the declaratory judgment suit could not be substituted for habeas, the court in *Kaminer* relied on *Clark v. Memolo*, 174 F.2d 978 (D.C.Cir. 1949), which emphasized the unseemliness of "having attacks upon the regularity of trials made before another judge." *Id.* at 982. See also *Kristensen v. McGrath*, 179 F.2d 796, 799–800 (D.C.Cir.1949) (allowing a declaratory judgment action to go forward since appellant was *not* yet in the custody of another district and presumably was therefore not able to invoke habeas). Here the plaintiffs have filed a habeas petition in the Northern District of Illinois, where they are constructively in the custody of the U.S. Marshal, see Amended Complaint for Declaratory and Injunctive Relief 23, 27–28. The rule stated in *Memolo* and *Kaminer* therefore applies. The underlying principle is applicable as well, as the plaintiffs are not only confined (if constructively) in Illinois's Northern District, but also were found extraditable by the court there. Cf. 28 U.S.C. § 2255 (1994) (prisoner challenging federal conviction may seek habeas relief by motion filed

---

**1.** Mauricio Madero O'Brien, wanted by Mexico, intervened. He later filed a motion indicating that he had waived all his defenses against extra-dition and had surrendered himself to authorities in Mexico. Madero's case is thus moot.

with "the court which imposed the sentence").

Of course plaintiffs' focus is not explicitly on their present custody; indeed, in briefing on comity they claim that the nature of the relief requested is different here since they have not formally sought a release from custody as in the habeas action. Brief of the Intervenor–Appellee at 4. But we have rejected precisely such efforts to manipulate the preclusive effect of habeas jurisdiction. In *Monk v. Secretary of the Navy*, 793 F.2d 364 (D.C.Cir.1986), a corporal convicted in a court martial sought a declaratory judgment that his conviction was illegal. Rejecting his claim on jurisdictional grounds, we said that it did not matter that he had not asked for release, since if he prevailed on his claims he would be immediately entitled to release or a new trial because of the issue preclusion effect of the judgment here. *Id.* at 366; cf. *Fernandez–Roque v. Smith*, 734 F.2d 576, 579 (11th Cir.1984) (district court consolidated Cuban refugees' respective declaratory judgment complaint and class action habeas proceeding with another individual petition for habeas relief).

A post-*Kaminer* case, *Hurley v. Reed*, 288 F.2d 844, 847–49 (D.C.Cir.1961), seemed to step back from *Kaminer*'s bar on declaratory judgment actions when habeas is available in another district, but was itself undercut by later developments. *Hurley* ruled that the Administrative Procedure Act allowed such suits in the context of a non-District of Columbia prisoner's claim that he was detained unlawfully because of a parole revocation proceeding in which he had not been afforded a right to counsel. But *Hurley* critically relied on the notion that § 10 of the APA was an independent grant of jurisdiction, see *Pickus v. United States Bd. of Parole*, 507 F.2d 1107, 1109 (D.C.Cir.1974) (citing *Hurley* for the explicit proposition that § 10 of the APA is an independent source of jurisdiction), overcoming *Kaminer's* explicit denial of jurisdiction. Since *Hurley*, the Supreme Court has emphatically rejected the idea that § 10 is a grant of jurisdiction.[2] *Califano v. Sanders*, 430 U.S. 99, 104–07, 97 S.Ct. 980, 983–85, 51 L.Ed.2d 192 (1977).

The precise holding of *Kaminer* may have itself been overruled in *Shaughnessy v. Pedreiro*, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868 (1955), allowing an alien subject to a deportation order to seek relief by way of a declaratory judgment action. See also *Brownell v. We Shung*, 352 U.S. 180, 77 S.Ct. 252, 1 L.Ed.2d 225 (1956) (extending *Pedreiro* to exclusion orders). But *Pedreiro* turned on the proposition that § 10 of the APA compelled the Court to give a narrow reading to the 1952 Immigration and Nationality Act's characterization of deportation orders as "final," which as used in the prior act had been understood to bar judicial review otherwise than by habeas.[3] Here, of course, the APA provides no suitable handle at all (even apart from *Califano's* having dispatched the idea that it was a grant of jurisdiction). As Judge Friendly pointed out in *United States v. Doherty*, 786 F.2d 491 (2d Cir.1986), extension of the APA to *extradition* orders is impossible, as "the variety of officers mentioned in 31 U.S.C. § 3184—a Supreme Court justice, United States circuit and district judges, a duly authorized magistrate, or a judge of a state court of general jurisdiction—cannot individually or as a group reasonably be deemed to constitute an 'agency' within 5 U.S.C. § 551(1)." *Id.* at 502.

There is, to be sure, the Fifth Circuit's decision in *Wacker v. Bisson*, 348 F.2d 602

---

2. *Hurley* was decided when the District of Columbia was the only place where a declaratory judgment action could be brought. Once 28 U.S.C. § 1391 was amended to allow such suits outside of the District, *Young v. Director, U.S. Bureau of Prisons*, 367 F.2d 331, 332–33 (D.C.Cir.1966), declined to extend *Hurley* to inmates "not confined in the District of Columbia, not sentenced in the District of Columbia, and seeking resolution of issues in no way related to this jurisdiction." *Id.* at 332. Even if *Hurley* were not dead law, then, *Young's* refinement would still preclude jurisdiction over this case.

In view of *Califano's* undermining of *Hurley's* premise, however, we do not rely on *Young* to establish that plaintiffs' case is not properly brought here.

3. *Pedreiro's* finding that declaratory relief was available as to deportation orders was itself largely extirpated by Congress. See 8 U.S.C. § 1105a (1994); *Agosto v. INS*, 436 U.S. 748, 752–53, 98 S.Ct. 2081, 2084–85, 56 L.Ed.2d 677 (1978).

(5th Cir.1965). Finding a "persuasive analogy between Section 10 of the APA and the Declaratory Judgment Act" and citing *Hurley,* the divided court permitted a person awaiting extradition to bring a declaratory judgment action, insisting that it was essentially identical in scope to a habeas action. *Id.* at 608–09. The extraditee in *Wacker* was apparently confined within the district in which he brought his declaratory judgment action, so that there was evidently absolute functional equivalence between that and his two previous habeas petitions, an equivalence noted by the dissenting judge in *Wacker, id.* at 604, and by Judge Friendly in *Doherty,* 786 F.2d at 500–01.[4] As we have already seen, *Califano* undermined the idea that the APA independently supplied jurisdiction where it had not previously existed. Although in *Doherty* the court merely refused to apply the Fifth Circuit's *Wacker* theory to declaratory judgment actions by the *government* when faced with a district court decision refusing extradition, and refrained from expressing any final opinion as to *Wacker's* correctness, *id.* at 501, it also characterized the case as "not the most substantial of foundations," *id.* We agree.

In *Chatman–Bey v. Thornburgh,* 864 F.2d 804 (D.C.Cir.1988) (en banc), we rejected the idea that a federal prisoner could use mandamus or a declaratory judgment to contest federal prison authorities' miscomputation of his federal good time credits, *id.* at 808–10, on the principle that the specific statute. (the habeas provision, 28 U.S.C. § 2255) displaced more general remedies. That principle is inapplicable here, as the extraditees' habeas remedy is the common law writ itself. But our decisions in *Memolo* and *Kaminer* found in the habeas procedures a fitness to the purpose—namely, channeling the litigation into its home district (rather than to the seat of the federal government generally), which parallels the carefully crafted limitations on statutory habeas that *Chatman–Bey* had sought to protect. See also *Preiser v. Rodriguez,* 411 U.S. 475, 489–90, 93 S.Ct. 1827, 1836, 36 L.Ed.2d 439 (1973) (applying the same principle to federal habeas for state prisoners). Accordingly, we think *Kaminer's* logic controls for persons who, like plaintiffs, have access to the habeas remedy.

■ In fact, in addressing the government's comity argument, the district court asserted an inferiority of the habeas remedy compared to declaratory relief, saying that a court in habeas "has no power to issue prospective relief" because, even if the petition were granted, the government could simply bring another extradition proceeding against the erstwhile extraditees. *Lobue v. Christopher,* 893 F.Supp. at 77. But this theory, much like the idea that the declaratory action differs from a habeas petition because it doesn't specifically seek release, disregards issue preclusion, precisely the doctrine we invoked in *Monk* for rejecting the plaintiff's effort to circumvent the effect of habeas availability. Although it is true that standard res judicata principles do not bar the habeas *applicant* from successive habeas petitions (such preclusion being replaced by the provisions of 28 U.S.C. § 2244(a), which permits dismissal of a repeat claim if the court is "satisfied that the ends of justice will not be served by such inquiry"), the United States would not be able to disregard, as against LoBue and Kulekowskis, any habeas judgments that those men might have secured against their warden finding the statutory process unconstitutional.[5] *Sunshine Anthra-*

---

4. The only discernable difference between the declaratory judgment action and the habeas petitions was in the defendants. Wacker named the Consul General of Canada as the defendant and real party in interest in his declaratory judgment action, rather than his jailer.

5. Such issue preclusion wouldn't necessarily affect Canada's rights as a party seeking an extradition, but, as plaintiffs did not name Canada in their declaratory judgment action, they evidently do not regard foreclosing Canada as having significant value. That view appears quite sound. Canada cannot extradite them without the affir-

mative assistance of the United States and its officers, and, although it might initiate proceedings looking to extradition (and even secure their detention to that end), under *Sunshine Anthracite* plaintiffs' hypothesized victory in the habeas action would bar federal officers from participating. A quest by Canada for extradition through a *state* court, as 18 U.S.C. § 3184 allows, would presumably not be barred by issue preclusion, but there is no reason it should be: plaintiffs' own legal theory on the constitutional problem posed by the extradition law is based on the nature of Article III courts and does not draw the

cite *Coal Co. v. Adkins,* 310 U.S. 381, 402–03, 60 S.Ct. 907, 916–17, 84 L.Ed. 1263 (1940) ("There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is *res judicata* in relitigation of the same issue between that party and another officer of the government"); cf. *Burton v. Johnson,* 975 F.2d 690, 693 (10th Cir.1992) (a district court has authority to *permanently* discharge a successful habeas petitioner where it deems such a remedy appropriate).

■ The intervenor (see note 1 above) pressed another purported difference between habeas and declaratory judgment relief, claiming that in a habeas case he "could not have maintained a class action ... nor sought class-wide relief in those proceedings." Brief of Intervenor–Appellee at 3. If by that he meant to claim that there is no equivalent to class actions in habeas, he was wrong, for courts have in fact developed such equivalents. See *United States ex rel. Sero v. Preiser,* 506 F.2d 1115, 1125–30 (2d Cir. 1974); cf. 17A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4268.3, 506–07 & n. 4 (1988) (citing cases employing such procedures). Conceivably it might be claimed that even such a class-action equivalent could not include some persons plaintiffs aspire to represent: those putative class members who are merely under threat of an extradition request by another country would not be in anyone's custody and therefore would have no custodian against whom to lodge a habeas petition. But plaintiffs, who *can* lodge a habeas petition (and have done so), cannot overcome their jurisdictional infirmities here by reference to the characteristics of putative class members—a class uncertified at the time the jurisdictional issue should have been resolved. "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton,* 414 U.S. 488,

494–95, 94 S.Ct. 669, 675–76, 38 L.Ed.2d 674 (1974).

Accordingly, there is no basis for jurisdiction over plaintiffs' declaratory judgment action. The judgment of the district court is vacated and the case remanded for the court to dismiss the case.

*So ordered.*

---

state court procedure in question. See *Lobue,* 893 F.Supp. at 68 n. 2 (recognizing the inapplicability of plaintiffs' contention to extradition proceedings in state court).