Emma ECKER, Appellant,

v.

The ATLANTIC REFINING COMPANY, a Pennsylvania corporation,
and
United States of America, and Herbert Brownell, Jr., Attorney General of the United States, as successor of the Alien Property Custodian, Appellees.

No. 6953.

United States Court of Appeals
Fourth Circuit.

Argued April 19, 1955.
Decided May 14, 1955.

Francis D. Murnaghan, Jr., Baltimore, Md., and Kenneth C. Proctor, Towson, Md. (Venable, Baetjer & Howard, Baltimore, Md., on the brief), for appellant.

George B. Searls, Atty., Dept. of Justice, Washington, D. C., Dallas S. Townsend, Asst. Atty. Gen., George C. Doub, U. S. Atty., Baltimore, Md., James D. Hill and Rollins M. Koppel, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellees United States and Herbert Brownell, Jr., Atty. General.

C. Damer McKenrick, Baltimore, Md. (Robert D. Bartlett and Bartlett, Poe & Claggett, Baltimore, Md., on the brief), for appellee Atlantic Refining Co.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This case stems from the seizure of a filling station property, located in the center of the business section of Towson, Maryland, by the Alien Property Custodian under a Vesting Order dated September 10, 1943. The property had been owned since October 27, 1914, by Emma Ecker (plaintiff below) and her husband. It had been occupied by Atlantic Refining Company (hereinafter called Atlantic) under leases from the Eckers since February 3, 1933. The current lease will expire on May 30,

1957. Atlantic purchased the property in a private sale in 1946, taking a quitclaim deed from the Custodian. No judicial condemnation of the Eckers' title ever occurred.

For some of the salient facts in this case, we quote from Judge Chesnut's opinion below; 125 F.Supp. 605, 607 and 610:

"Emma Ecker, was born in Austria in 1869 and while living there married Leopold Ecker who was born there in 1876. After their marriage they came to the United States in 1909 and were naturalized in 1921. The next year, 1922, they returned to Austria and bought a residence property in a suburb of Vienna and also nearby a 22-acre vineyard. Between 1922 and 1929 they made some temporary visits to the United States but over the period of seven years they lived for five and one-half years in Vienna. Emma Ecker never returned to the United States until 1951, shortly before this suit was filed. Her husband, Leopold Ecker, did make a few very temporary visits to the United States, the last one being in 1932. Thereafter he and his wife continued to live in their residence property near Vienna until his death in 1948. Leopold Ecker kept a shoemaker's shop in Towson, Maryland, prior to 1921. In 1914 he and his wife purchased the lot in Towson which is the subject matter of the controversy in this case. Before returning to Austria on his visit here in 1932 he made a ten year lease of this property to the St. Paul Realty Corporation, which lease was later assigned, with the consent of the lessor, to the Atlantic Refining Company.

\* \* \* \* \*

"In 1939 Leopold Ecker made application for German citizenship, which, after investigation was recommended but not in fact consummated owing to what is said to have been a change in the German poli-cy. Leopold Ecker also joined a public welfare association (NSV) and Emma Ecker joined the National Socialist Women's League, the women's auxiliary of the Nazi Party."

Upon the end of World War II, the Eckers learned of the seizure of their filling station property in Towson, Maryland, and a claim was filed on their behalf with the Custodian for return of the property. Since the property had been sold, the Custodian, in 1951, returned the proceeds of sale, less costs of administration and income taxes, after a determination that this return was "in the interest of the United States." Plaintiff's husband died in 1948 and she came back to this country from Austria in February, 1951. This suit was filed on September 9, 1952.

Plaintiff claims that the seizure and private sale of her property were improvident and illegal and that she is still the owner, subject only to the unexpired term of the lease with Atlantic and to an accounting to Atlantic for the monies received by her from the Custodian. Plaintiff's complaint seeks a declaratory judgment to this effect, under the Federal Declaratory Judgments Act, 28 U.S.C.A. §§ 2201, 2202. The Attorney General of the United States was permitted to intervene, when the plaintiff challenged the constitutionality of the Trading with the Enemy Act, 50 U.S.C.A.Appendix, § 1 et seq., under which the seizure and sale were made. The District Court dismissed this civil action and plaintiff has appealed to us.

The case and the apposite issues therein were thoroughly discussed in the elaborate opinion filed by Judge Chesnut in the District Court. Since we concur in that opinion, we deem it necessary to add little to that opinion. We, accordingly, content ourselves with a few brief comments on what appear to be the principal issues involved in this appeal.

We think Judge Chesnut was clearly correct in holding that the Eckers were "enemies" as that term is used in the Trading with the Enemy Act, 50 U.S.C.A.Appendix, §§ 1–40. By

Section 2 of the Act, the word "enemy" is defined to include:

"(a) Any individual * * * of any nationality, resident within the territory (including that occupied by the military and naval forces) of any nation with which the United States is at war * *."

It is quite clear that the word "resident" here connotes less than "domicile" and that, as Judge Chesnut found, the Eckers were "residents" of Austria.

"* * * To become a sojourner no intention whatever is necessary, simply the fact of personal existence in the place. For residence there is an intention to live in the place for the time being. For the establishment of domicile the intention must be not merely to live in the place but to make a home there." (Beale, The Conflict of Laws (1935), Vol. 1, p. 109.)

See, also, Guessefeldt v. McGrath, 342 U.S. 308, 72 S.Ct. 338, 96 L.Ed. 342; McGrath v. Kristensen, 340 U.S. 162, 175, 71 S.Ct. 224, 95 L.Ed. 173; Clark v. Uebersee Finanz-Korporation, 332 U.S. 480, 68 S.Ct. 174, 92 L.Ed. 88.

█ We find no merit in plaintiff's attack on the constitutionality of the Trading with the Enemy Act. From Judge Chesnut's opinion we quote:

"Viewed as a whole, the purpose and effect of the Trading with the Enemy Act as applicable here is that any property in the United States even though owned by a citizen of the United States resident within an enemy country (including Austria in this case) could be seized and vested by the Alien Property Custodian, and the sole remedy provided for an improper seizure was given by section 9(a) of the Act which provided that a claim might be filed by the owner with the Alien Property Custodian and suits could be brought against the Alien Property Custodian by the claimant for a return of the property. It is this provision of the Act which gratifies

the constitutional requirement of due process. Becker Steel Co. of America v. Cummings, Attorney General, 296 U.S. 74, 56 S.Ct. 15, 80 L.Ed. 54."

See, also Wickard v. Filburn, 317 U.S. 111, 129, 63 S.Ct. 82, 87 L.Ed. 122; Commercial Trust Co. of New Jersey v. Miller, 262 U.S. 51, 43 S.Ct. 486, 67 L. Ed. 858; Stoehr v. Wallace, 255 U.S. 239, 41 S.Ct. 293, 65 L.Ed. 604; Central Union Trust Co. of New York v. Garvan, 254 U.S. 554, 41 S.Ct. 214, 65 L.Ed. 403.

Plaintiff further insists that there is error in Judge Chesnut's conclusion:

"I conclude, therefore, as a matter of law, that the plaintiff's property was duly seized and vested by the Custodian and thereafter duly sold to the Atlantic Refining Company as a result of which a good title was transferred to and vested in the defendant, and that the sufficiency of this title cannot be further litigated in this suit against the purchaser."

█ We think this conclusion was altogether correct. To quote Judge Chesnut further:

"The Alien Property Custodian also had power and authority to sell the property at private sale after the highest bidder at the public auction had refused to complete the sale. Counsel for the plaintiff contends to the contrary on reference to section 12 of the Act which provides that ordinarily the sale of real property shall be at public sale after due advertisement unless the President, stating the reasons therefor, in the public interest shall otherwise determine. However, it appears from the Act and Executive Orders that the President with due authority did delegate the determination of this question to the Custodian by Executive Order No. 9095 above quoted. This is not disputed by counsel for the plaintiff who, however, contends that the President could properly have dele-

gated it only to some one other than the Custodian. No authority has been cited in support of this contention and I know of none.

"Counsel for the government say that private sales have very frequently been made by the Custodian; but while there are apparently only a few reported judicial decisions on the point, private sales have been upheld in at least two cases. United States v. Chemical Foundation, Inc., 272 U.S. 1, 47 S.Ct. 1, 71 L.Ed. 131, and Lippmann v. McGrath, D.C., 94 F.Supp. 1016. It is also to be noted that by section 12 of the Act the Custodian is given the power of a common law trustee in the management and disposition of property lawfully seized by him. And section 7(c) of the Act provides that where property has been sold by the Custodian the only remedy of the claimant is to secure from the Custodian the net proceeds of the sale. Becker Steel [Co. of America] v. Cummings, supra. In the instant case the net proceeds of the sale of the property to the Atlantic Refining Company have been heretofore paid to the plaintiff, or at least there is no controversy here about that. If anything further is due on this account it could not be adjudicated in this case."

Judge Chesnut further found that the purchase price of $22,000 "was a fair and reasonable price for this property" at the time.

█ We find, as did the District Judge, that there was no reasonable basis for plaintiff's contention that Atlantic fraudulently conspired with Schneider, or possibly some person connected with the Custodian, to deprive the plaintiff of valuable property rights to her damage.

We advert briefly to a point not considered by either the District Judge or counsel in this case. It was raised by questions from the bench during oral argument. Was the plaintiff estopped from questioning the validity of the sale to Atlantic by her acceptance of the proceeds from this sale? Since it is unnecessary for our decision in this case, we do not pass on this point.

The judgment of the District Court is affirmed

Affirmed.