**Margaret Marsh KLINE and Patricia Catapano**

v.

**John W. VLANDIS, Director of Admissions, The University of Connecticut.**

**Civ. No. 14680.**

United States District Court, D. Connecticut.

June 14, 1972.

John A. Dziamba, Tolland-Windham Legal Assistance Program Inc., Willimantic, Conn., Raymond R. Norko, Tolland-Windham Legal Assistance Pro-

gram Inc., Danielson, Conn., for plaintiffs.

Robert K. Killian, Atty. Gen., John G. Hill, Jr., Asst. Atty. Gen., Storrs, Conn., for defendant.

Before ANDERSON, Circuit Judge, BLUMENFELD and CLARIE, District Judges.

## MEMORANDUM OF DECISION FINDINGS OF FACT and CONCLUSIONS OF LAW

BLUMENFELD, District Judge:

■ In this case, two students enrolled at the University of Connecticut, who are required to pay tuition and other fees at higher rates than residents of Connecticut by reason of the application of Conn.Gen.Stats. § 10–329b, as amended by Public Act No. 5, § 126 (June Session 1971),[1] challenge the validity of this statute as violative of the due process and equal protection clauses of the United States Constitution. These claims state causes of action under the Civil Rights Act, 42 U.S.C. § 1983, and jurisdiction is properly rested on 28 U. S.C. § 1343(3). See Lynch v. Household Fin. Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972). Since part of the relief sought is an injunction against the enforcement of a state statute on the ground of its unconstitutionality, a three judge district court was convened. See 28 U.S.C. §§ 2281 and 2284.

### I.

The plaintiff Margaret Marsh Kline is an undergraduate student at the University of Connecticut. In May of 1971, while attending college in California, she became engaged to Peter Kline, a lifelong Connecticut resident. On June 26, 1971, they were married at her home in California and soon after they took up residence in Storrs, Connecticut, where they have established a permanent home. Mrs. Kline has a Connecticut driver's license and is registered as a Connecticut voter. The defendant John W. Vlandis, Director of Admissions at the University of Connecticut, has classified Mrs. Kline as an "out of state student" under subsection (a) (3) of § 126, which provides:

"(A)n 'out-of-state student,' if married and living with his spouse, means a student whose legal address at the time of his application for admission to such a unit was outside of Connecticut; . . . . ."

The intervening plaintiff Patricia Catapano applied for admission to the University of Connecticut from Ohio in January 1971 and was accepted in February 1971. In August of that year, she moved her residence to Connecticut and registered as a full-time graduate student. She, too, has a Connecticut driver's license and has been registered as a Connecticut voter. The defendant has classified her as an "out of state student" under subsection (a) (2) of § 126, which provides:

"(A)n 'out-of-state student,' if single, means a student whose legal address for any part of the one-year period immediately prior to his application for admission at a constituent unit of the state system of higher education was outside of Connecticut; . . . . "

For the Fall semester 1971–72 each plaintiff was required to pay $150 for tuition, plus an additional $200 non-resident fee, whereas residents were charged nothing. For the Spring semester 1972 they were each required to pay a tuition fee of $425, plus an additional $200 non-resident fee, as compared to only a tuition fee of $175 paid by students classified as Connecticut residents.[2]

1. Involved also are regulations of the University which have followed the relevant portions of the statute in haec verba.

2. The plaintiffs' application for a temporary injunction against enforcement of the statute and the regulations thereunder setting up the fee differentials was denied after the court was advised that student loans or grants sufficient to meet the added charges for the Spring semester had been made available to them. See Ruling on Application for a Preliminary Injunction, January 4, 1972.

Once the plaintiffs have been classified as "out of state students" they are plainly and explicitly barred from obtaining any change in that status, since the statute commands, subsection (a) (5):

> "The status of a student, as established at the time of his application for admission at a constituent unit of the state system of higher education under the provisions of this section, shall be his status for the entire period of his attendance at such constituent unit." [3]

## II.

The plaintiffs do not claim that the statute does not read so as to classify them as non-residents. Rather, their claim is that by providing that they be kept in that class the statute is unconstitutional. The last two clauses of section 1 of the fourteenth amendment to the Constitution of the United States read:

> "nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The plaintiffs rely on both the due process and the equal protection clauses. We do not consider these separately because " . . . the concepts of equal protection and due process, both stemming from our American ideal of fairness, are not mutually exclusive . . . . " Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954). It is not enough to say that the state has power to treat different classes of persons in different ways, Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 31 S. Ct. 337, 55 L.Ed. 369 (1911); the classifications "must be reasonable, not arbitrary, and must rest on some ground of difference having a fair and substantial relation to the object of the legislation,

so that all persons similarly circumstanced shall be treated alike." Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920). See also, Reed v. Reed, 404 U.S. 71, 75–76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). Assuming that it is permissible for the state to impose a heavier burden of tuition and fees on non-resident than on resident students, the state may not classify as "out of state students" those who do not belong in that class. Whether the statue is construed as creating an irrebutable presumption or as a rule of substantive law, that is what it does. In Heiner v. Donnan, 285 U.S. 312, 321, 52 S.Ct. 358, 359, 76 L.Ed. 772 (1932), the Court was confronted with a constitutional challenge to a federal statute which imposed a higher tax on transfers of property made by any donor within two years of his death because such transfers "shall be deemed and held to have been made in contemplation of death . . . . " In holding that the statute which imposed a tax upon an assumption of fact which the taxpayer was forbidden to controvert was so arbitrary and unreasonable as to violate the due process clause, the Court said:

> "This court has held more than once that a statute creating a presumption which operates to deny a fair opportunity to rebut it violates the due process clause of the Fourteenth Amendment." Id. at 329, 52 S.Ct. at 362.

See also, Ducharme v. Putnam, 161 Conn. 135, 141–143, 285 A.2d 318 (1971). Furthermore, since the irrebuttable presumption in § 126(a) (5) freezes the plaintiffs into the classification of "out of state students," they are required to pay higher tuition and fees than "in state students." Thus, the effect of the statute is to deny the plaintiffs equal protection of the laws in vio-

---

3. Shortly after this case was heard, defense counsel informed the court that the legislature, then in session, was considering a bill relating to tuition payments by nonresidents which would repeal the particular portions of the statute which are the target of constitutional attack here. Although such a bill was passed (House No. 5302), the view that such legislative action would moot the claims made here lost its validity when the Governor of Connecticut vetoed it on May 18, 1972.

lation of the fourteenth amendment.[4] The rule that a conclusive presumption may not be utilized to classify a person as a non-resident when he is in fact a resident was applied in Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L. Ed.2d 675 (1965), where the Court invalidated a section of the Texas Constitution which prohibited a member of the armed forces who first established his home in Texas during the course of his military service from satisfying the residency qualifications for a voter so long as he remained a member of the armed forces. The Supreme Court held that by prohibiting all servicemen not residents of Texas before induction "ever to controvert the presumption of nonresidence, the Texas Constitution imposes an invidious discrimination in violation of the Fourteenth Amendment." *Id.* at 96, 85 S.Ct. at 780.

For the foregoing reasons, we hold that Conn.Gen.Stats. § 10–329b, as amended by Public Act No. 5, § 126 (1971), and the regulations promulgated thereunder by the defendant are unconstitutional in that they violate section 1 of the fourteenth amendment to the Constitution of the United States. We also find that before the commencement of the Spring semester for 1972 each of the plaintiffs was a bona fide resident of the State of Connecticut and conclude that each of them is entitled to a refund of the amounts of tuition and fees paid by her which is in excess of the amounts paid by resident students as tuition and fees for that semester.

The defendant is enjoined from enforcing subsections (a) (2), (a) (3) and (a) (5) of Conn.Gen.Stats. § 10–329b, as amended by Public Act No. 5, § 126 (1971), and any regulations based thereon.

Enter judgment for the plaintiffs.

4. Since the statute is stigmatized as so arbitrary and unreasonable by its own terms as to be unconstitutional, we do not reach the question of whether to test the validity of the "out of state" classification as being "not merely *rationally re-*

*lated* to a valid public purpose but *necessary* to the achievement of a *compelling* state interest." Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972).