**Russell A. KELM, Plaintiff-Appellant,**

v.

**William S. CARLSON et al., Defendants-Appellees.**

No. 72-1241.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 3, 1972.

Decided Feb. 8, 1973.

Russell A. Kelm, in pro. per.

B. Gary McBride, Spengler, Nathanson, Heyman, McCarthy & Durfee, Toledo, Ohio, for defendants-appellees.

Before PHILLIPS, Chief Judge, and EDWARDS and McCREE, Circuit Judges.

EDWARDS, Circuit Judge.

Appellant, a recent graduate of the Law School at the University of Toledo, appeals from the dismissal of his suit for reimbursement of $1,550 tuition fees charged him as an out-of-state resident. It is his claim that his federal constitutional rights to due process of law and to equal protection of the laws have been abridged by defendants (officers of the University) by their interpretation of the out-of-state tuition regulation in force at the University at the applicable times or by the regulation itself. He claims that jurisdiction of this case lies in the federal district court, under 42 U.S.C. § 1983 (1970) and 28 U.S.C. § 1343(3) (1970).

Appellees, properly, in our view, do not dispute the jurisdiction of the District Court to hear and decide the federal constitutional issues under 42 U.S.C. § 1983 and 28 U.S.C. § 1343. Lynch v. Household Finance Co., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1970); Starns v. Malkerson, 326 F.Supp. 234

(D.Minn.1970), aff'd mem., 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971).

The District Judge dealt with the due process issue by remanding the matter to the defendants for the purpose of furnishing a written statement of the University's reasons for refusing to reclassify appellant as a resident of Ohio. That statement has now been furnished (as we will see) and we believe that the District Judge's opinion and order of June 16, 1971, has dealt adequately and correctly with the due process issue in this case.

What we deem to be left in this appeal is appellant's contention that the University regulation as interpreted created an arbitrary and unreasonable classification and denied him the equal protection of the laws.

The facts in this dispute have been accurately set forth in findings by the District Court:

"The court finds as fact that the plaintiff assumed residence in Toledo, Ohio, on or about June 1, 1968. He worked full time until October, 1968. He was married in the interim, his wife entering upon full-time employment as a teacher under a Toledo Board of Education contract. He enrolled in the University of Toledo College of Law in October of 1968.

"Initial enrollment was as a non-resident student as defined in Rule 1 of the 1968 University of Toledo Rules.

"Plaintiff enrolled in an R.O.T.C. Program because of a 1–A draft classification.

"He has resided in Toledo and has been continuously enrolled in the College of Law except for a required period of active duty. He has had some interim employment and has been self-supporting.

"One year later (October, 1969), without seeking the reclassification as provided for in Rule 6 of 1968 rules and Rule 5 of 1969 rules, plaintiff unilaterally classified himself and reg-istered as an Ohio resident student, paying the lower student fees allowed thereby.

"On January 22, 1971, the bursar of the university, pursuant to an announced unlimited right of audit review, denied the plaintiff's resident status claim retroactive to October, 1969, and billed plaintiff for five quarters of non-resident surcharge fees. Plaintiff was required to register as a non-resident. The deposited fees represent the total due the university for non-residency classification.

"Thereafter, an appeal was taken to the Residency Committee in writing by and with supporting documents.

"On February 26, 1971, the plaintiff was notified that his reclassification was denied, and there was no further appeal provided, this latter on March 4, 1971. The plaintiff was finally notified on March 8, 1971, that a requested oral hearing or re-hearing was and will be denied."

Appellant's Application for Non-resident Fee Exemption was not filed until February 1, 1971. This suit was filed April 1, 1971, after the final denials of the application referred to above. With these facts before us, we turn to the narrow equal protection issue raised by petitioner.

The State of Ohio has authorized the boards of trustees of its state universities to "charge reasonable tuition for the attendance of pupils who are nonresidents of Ohio," O.R.C. § 3345.01 (1972), and to adopt rules and regulations pursuant thereto. O.R.C. § 3333.-04 (1972).

No attack is made on these statutes, and federal case law upholds their validity. Starns v. Malkerson, 326 F.Supp. 234 (D.Minn.1970), aff'd mem., 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971); Clarke v. Redeker, 259 F.Supp. 117 (S.D.Iowa 1966).

Pursuant to these statutes the Board of Trustees of the University of Toledo adopted a regulation concerning stu-

dents' nonresident status, the currently disputed portions of which follow:

"4. A student who enters the State of Ohio from another state for the primary purpose of enrolling in an Ohio institution of higher education shall be considered to be a nonresident student during the period of continuous enrollment as a full-time student in an Ohio institution of higher education.

"5. A student classified as a nonresident student may be reclassified as a resident of Ohio for higher education subsidy purposes if:

a. the parents of a student under 21 years of age take up residence in Ohio and one of the parents is gainfully employed on a full-time basis in Ohio;

b. the student over 21 years of age presents a clear and convincing evidence to an administrative officer or administrative panel of the institution and there is a finding of exceptional circumstances justifying a change in classification because of having established a separate residence in Ohio for 12 months or more preceding the request for reclassification and because of having made definite commitments to enter into gainful employment in Ohio upon completion of a degree program."

Any possible ambiguity concerning the meaning of 5(b) language, "definite commitments to enter into gainful employment in Ohio upon completion of a degree program," was, we believe, resolved by the letter of the Residence Committee (written after the District Court remand) stating its reasons for rejecting appellant's application for exemption from the nonresident fee. That letter said in part:

"Pursuant to the Order of the Court herein contained in its Opinion filed June 16, 1971, the following reasons are submitted for the finding of the Residency Committee of The University of Toledo denying reclassification of residency status to Russell A. Kelm:

"1. The Committee finds that Mr. Kelm did not present adequate evidence pursuant to Rule 5 b. of Rules Governing Ohio Resident Qualifications of The University of Toledo or has made definite commitments to enter into gainful employment in Ohio upon completion of his degree program in the absence of any evidence presented to the Committee upon which it could determine that Mr. Kelm had an opportunity for employment in the form of an available position in Ohio for his acceptance."

It seems clear therefore that the terms in Rule 5(b) "made definite commitments to enter into gainful employment" include proof that the applicant for a nonresident exemption actually has a job in Ohio available to him at the time of his graduation, and that without such proof, he cannot acquire resident status for purposes of the University's tuition regulation.

Such a condition seems to us vulnerable to appellant's challenge as arbitrary and unreasonable. Since pregraduation offers are most frequently made to the top percentages of law school graduates, the regulation would discriminate against the majority of law graduates who in good faith had moved to Ohio and had established residence for all other purposes. It discriminates against members of that same majority who not only have moved to Ohio in good faith and establish residence there for all other purposes, but who, like the appellant, have secured employment in Ohio on a part-time basis to finance law school and whose wives are gainfully employed full-time in Ohio. In addition, it discriminates against those law school students who desire on graduation to go into practice for themselves. It would also work with discriminatory harshness as between students in classes graduating when hiring opportunities were numerous as compared to those in years

when little if any pregraduation hiring was available.

The classification as nonresidents of all applicants who are unable to secure pregraduation job commitments from prospective employers represents an irrebuttable presumption which has no reasonable relation to fact.

Although in our instant case the class excluded by the above-described irrebuttable presumption is somewhat smaller than is the class excluded in Kline v. Vlandis, 346 F.Supp. 526 (D.Conn.1972), we find the constitutional reasoning and logic of the *Vlandis* case both applicable to this case and persuasive:

> Assuming that it is permissible for the state to impose a heavier burden of tuition and fees on non-resident than on resident students, the state may not classify as "out of state students" those who do not belong in that class. Whether the statute is construed as creating an irrebutable [*sic*] presumption or as a rule of substantive law, that is what it does. In Heiner v. Donnan, 285 U.S. 312, 321, 52 S.Ct. 358, 359, 76 L.Ed. 772 (1932), the Court was confronted with a constitutional challenge to a federal statute which imposed a higher tax on transfers of property made by any donor within two years of his death because such transfers "shall be deemed and held to have been made in contemplation of death . . . ." In holding that the statute which imposed a tax upon an assumption of fact which the taxpayer was forbidden to controvert was so arbitrary and unreasonable as to violate the due process clause, the Court said:
>
> > "This court has held more than once that a statute creating a presumption which operates to deny a fair opportunity to rebut it violates the due process clause of the Fourteenth Amendment." Id. at 329, 52 S.Ct. at 362.

See also, Ducharme v. Putnam, 161 Conn. 135, 141–143, 285 A.2d 318

(1971). Furthermore, since the irrebuttable presumption in § 126(a)(5) freezes the plaintiffs into the classification of "out of state students," they are required to pay higher tuition and fees than "in state students." Thus, the effect of the statute is to deny the plaintiffs equal protection of the laws in violation of the fourteenth amendment.[4] The rule that a conclu-

4. Since the statute is stigmatized as so arbitrary and unreasonable by its own terms as to be unconstitutional, we do not reach the question of whether to test the validity of the "out of state" classification as being "not merely *rationally related* to a valid public purpose but *necessary* to the achievement of a *compelling* state inter st." Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972).

sive presumption may not be utilized to classify a person as a non-resident when he is in fact a resident was applied in Carrington v. Rash, 380 U.S 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965), where the Court invalidated a section of the Texas Constitution which prohibited a member of the armed forces who first established his home in Texas during the course of his military service from satisfying the residency qualifications for a voter so long as he remained a member of the armed forces. The Supreme Court held that by prohibiting all servicemen not residents of Texas before induction "ever to controvert the presumption of nonresidence, the Texas Constitution imposes an invidious discrimination in violation of the Fourteenth Amendment." Id. at 96, 85 S.Ct. at 780.

Kline v. Vlandis, *supra*, 346 F.Supp. at 528–529.

■■ As we have indicated, we recognize that Ohio and its universities have a right to charge different fees to out-of-state residents than to its own citizens. We also recognize that it is neither arbitrary nor unreasonable for it to place a strong burden of proof as to change of residence on a former out-of-

state student who claims Ohio residency lest such claim be founded only upon the student's desire to escape the tuition surcharge. We also recognize (and appellant concedes it) the reasonableness of the one-year residency requirement before application for residency status for tuition purposes can be filed. *See* Starns v. Malkerson, 326 F.Supp. 234 (D.Minn.1970), aff'd mem., 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971).

We likewise agree with appellees that the regulation we deal with herein is not concerned with one of the fundamental rights like voting or welfare so to be tested against the "compelling state interest" standard. *See* Kirk v. Board of Regents, 273 Cal.App.2d 430, 78 Cal.Rptr. 260 (1969); Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972).

The heavy burdens the challenger in this case has to bear have been described thus in one of the leading cases dealing with the application of the equal protection clause of a state regulation:

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369. "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730. "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393.

Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

Even more recently the Supreme Court has set forth a minimum equal protection test:

> The tests to determine the validity of state statutes under the Equal Protection Clause have been variously expressed, but this Court requires, at a minimum, that a statutory classification bear some rational relationship to a legitimate state purpose. Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957); Williamson v. Lee Optical Co., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); Gulf, Colorado & Santa Fé R. Co. v. Ellis, 165 U.S. 150, 17 S.Ct. 255, 41 L.Ed. 666 (1897); Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886).

Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 172, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972).

The word "resident" has many meanings in the law, largely determined by the statutory context in which it is used. Kristensen v. McGrath, 86 U.S.App.D.C. 48, 179 F.2d 796 (1949), aff'd, 340 U.S. 162, 71 S.Ct. 224, 95 L.Ed. 173 (1950). Obviously, however, when an Ohio statute and an Ohio school regulation seek to distinguish between temporary sojourners in Ohio who reside there only for school purposes and Ohio residents, the intention of the party and what he has done to evidence that intent becomes critical. Ecker v. Atlantic Refining Co., 222 F.2d 618 (4th Cir.), cert. denied, 350 U.S. 847, 76 S.Ct. 84, 100 L.Ed. 754 (1955). But here the regulation has imposed a condition completely beyond the control of the applicant. As we have pointed out above, the condition can act as an impassable barrier to many students who in utter good faith intend to and, for all other purposes, have succeeded in establishing residency in Ohio.

Of course, if Ohio made the actual possession of a job a general condition of Ohio residency for purposes say of

welfare or voting, such a condition would be struck down forthwith. Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965). With lesser interests than these at stake, it is still relevant to note that every legitimate state concern with weeding out fictitious claims of residency by out-of-state students can be served with "more precise tests" (Stanley v. Illinois, 405 U.S. 645, 655, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Carrington v. Rash, *supra*, 380 U.S. at 95, 85 S.Ct. 775) than the test which is attacked herein.

■ For the reasons we have outlined above, we hold that for the University of Toledo to require proof that a law student has actually secured post-graduation employment in Ohio as a condition precedent to granting him residence status represents a violation of the equal protection clause of the Federal Constitution.

The judgment of the District Court is reversed and the case is remanded for reconsideration in the light of our holding.

McCREE, Circuit Judge (dissenting).

I respectfully dissent. This is not a case like Kline v. Vlandis, 346 F.Supp. 526 (D.Conn.), probable juris. noted, 409 U.S. 1036, 93 S.Ct. 521, 34 L.Ed.2d 485 (1972), in which a rule of law (or irrebuttable presumption) fails to satisfy the due process requirement that a litigant be afforded the opportunity to controvert an assumption of fact. *See* Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772 (1932).[1] *Kline* is a case in which a student who first enrolled as a nonresident could never during the course of his studies—regardless of a change of his circumstances—become a resident for the purpose of enjoying the lower tuition rate.

In this appeal, the State of Ohio permits a change in status, but only in certain limited circumstances. A student over 21 years of age, or an emancipated minor, may be reclassified a resident for purposes of tuition if he presents "clear and convincing evidence" that he has established a separate residence in Ohio for at least one year preceding the request for reclassification and that he has made "definite commitments to enter into gainful employment in Ohio" upon his graduation.[2] The chairman of

---

[1]. Indeed, appellant has not asserted, in his pleadings, proofs, or arguments before the District Court and this court, that the university's regulations violate the due process clause of the Fourteenth Amendment, except to the extent that he has been denied procedural due process because of the refusal of the university to grant him a trial-type hearing.

[2]. The regulations are equally circumscribed for students who have not come to Ohio for the primary purpose of enrolling in an institution of higher education. Rule 2 provides:

An adult student over 21 years of age is considered to be an Ohio resident if he has resided in the state for 12 consecutive months or more immediately preceding enrollment; or if he is gainfully employed on a full-time basis and is residing in Ohio, and is pursuing a part-time program of instruction, and if there is reason to believe that he did not enter Ohio primarily in order to en-

roll in an Ohio institution of higher education. Teachers taking up residency in Ohio preparatory to teaching in Ohio schools and colleges shall be considered residents of the State for purposes of enrollment during the summer term immediately preceding the beginning of employment under their contract of professional service.

Unemancipated minors who are originally classified as nonresidents may be reclassified as residents if their parents "take up residence in Ohio and one of the parents is gainfully employed on a full-time basis in Ohio." Rule 5.a. With respect to military personnel, rule 7 provides:

Persons in military service who entered such service as residents of Ohio and their dependents shall be considered residents of Ohio if they provide proof of continued Ohio domicile and of continued voting eligibility in Ohio. Persons in military service and their dependents shall be considered residents of

the University of Toledo's Residence Committee, in his answers to interrogatories propounded by appellant and in his testimony at trial, indicated that the Committee considers the requirements of this rule to be satisfied only if the applicant submits "a letter from the prospective employer indicating that a definite employment agreement has been reached."

We test the constitutionality of this university regulation by the traditional equal protection test: does the regulation bear a rational relationship to a legitimate state interest? *See* Dandridge v. Williams, 397 U.S. 471, 486–487, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); Starns v. Malkerson, 326 F. Supp. 234, 239 (D.Minn.1970), aff'd, 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971) (mem.). Ohio has a legitimate interest in seeing that nonresident students who want to enjoy the resident tuition rate are reasonably likely to remain in the state for some appreciable period following completion of their studies. *See* Starns v. Malkerson, *supra*, 326 F.Supp. at 240–241. I believe that there is a reasonable relationship between the certainty of gainful employment and the likelihood of remaining in the state. It is not arbitrary to treat differently persons who intend to become self-employed, because it can rationally be concluded that they are more exposed to the insecurity engendered by economic fluctuations within the state and, having fewer ties, are more likely to move to another state. Further, it would be difficult to police an exception for persons intending to become self-employed because presumably the only evidence that they could offer would be their own unsubstantiated statements of intention,[3] statements with which, it is fair to say, the university's Residence Committee would be inundated upon its agreement to consider the proposed status of self-employment as sufficient to warrant reclassification.

Our role is not to substitute our judgment for that of the state but merely to determine if the relationship posited by the state is unreasonable. Especially in view of the great importance to many of our nation's finest institutions of higher education of this question of residency for tuition purposes,[4] we should be careful in evaluating the permissibility of legislative judgments relating to purely

Ohio during the period of active duty assignment and actual residence in Ohio. Aliens are treated similarly to United States citizens:

Alien students admitted to the United States on student visas or other temporary visas shall be classified as nonresident students. Aliens holding immigrant visas may establish Ohio residency in the same manner as citizens of the United States.

3. For example, an undergraduate student could state his intention of becoming, after graduation, a consulting anthropologist, a practicing philosopher, or a self-employed securities speculator.

4. It has been estimated by one source that the tuition losses that can be expected from large-scale judicial invalidation of regulations such as that involved in this case will be quite substantial:

| | |
|---|---|
| University of California | $12,567,000 |
| University of Colorado | 9,928,440 |
| University of Illinois | 4,003,458 |
| Indiana University | 6,625,920 |
| University of Michigan | 11,730,864 |
| University of Minnesota | 5,655,744 |
| University of Missouri | 6,814,440 |
| University of North Carolina at Chapel Hill | 4,141,975 |
| Ohio State University | 6,399,750 |
| University of Texas System | 6,107,832 |
| University of Vermont | 3,610,500 |
| University of Wisconsin (five campuses) | 15,715,590 |

Data: National Assn. of State Universities & Land Grant Colleges

*Business Week*, Oct. 14, 1972, at 29.

economic matters. I cannot say that the relationship borne by rule 5b, as construed, to a legitimate state purpose is an irrational one, and, because I believe that appellant was not entitled to a trial-type hearing in satisfaction of his right to procedural due process, I would affirm the judgment of the District Court.