William A. **PELLETREAU**

v.

Eugene A. **SAVAGE, Director of Admissions, University of New Hampshire.**

**Civ. A. No. 73–34.**

United States District Court,
D. New Hampshire.

Aug. 29, 1974.

---

11. See Harvard Note, *supra,* at 1544–49.

the University of New Hampshire for the school years of 1970–71, 1971–72, and 1972–73.

## THE FACTS

The facts are not in dispute. Both parties agree that the tape transcription of the appeal hearing held before the Residency Appeal Board Members of the University of New Hampshire on April 26, 1973, is accurate and contains the essential facts. Exhibit 1.

The plaintiff entered the University of New Hampshire, Durham Campus, in September of 1969. His application for admission states that his residence was that of his parents in Norwalk, Connecticut. At that time, he was single. Exhibit 4. As a Connecticut resident, the plaintiff was qualified under Connecticut law and the Rules of the University of Connecticut to attend that University as an in-state student.

The plaintiff was married in March of 1970 in Lake Placid, New York and immediately thereafter he and his bride moved to Dover Road in Durham, New Hampshire, where they rented an apartment. The record does not disclose the domicile of the plaintiff's wife prior to her marriage, but I assume that it was in New York State. In September of 1970, the plaintiff's father, who is an attorney domiciled in Norwalk, Connecticut, purchased a duplex house in Dover, New Hampshire. The plaintiff and his wife moved to this house in October of 1970 and occupied one-half of it rent free while he was a student. He received and kept the rent from the other half of the house. The plaintiff's father paid the real estate taxes on this property as well as the heating bill. The plaintiff paid for the electricity and the phone service.

After moving to Dover with his wife in October of 1970, the plaintiff obtained a New Hampshire driver's license and registered his automobile in Dover. He registered to vote and has voted in Ward 4 in Dover. He obtained a New Hampshire resident hunting and fishing license.

Philip C. Keefe, Dover, N. H., for plaintiff.

Joseph A. Millimet, Devine, Millimet, Stahl & Branch, Manchester, N. H., for defendant.

## OPINION

BOWNES, District Judge.

This is a civil rights action brought pursuant to 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983. The plaintiff claims that his due process and equal protection rights guaranteed to him under the Fourteenth Amendment to the Constitution were denied to him by the defendant's act of classifying him as an out-of-state student for tuition purposes at

During the summer of 1970, the plaintiff was employed by a Mr. Miller in Darien, Connecticut. In the summer of 1971, the plaintiff worked for Leoca Construction Company in Dover, New Hampshire. While he was going to school in 1972, he worked as a waiter in Durham. He also worked part-time during the school year 1972–73. He graduated from the University of New Hampshire in June of 1973.

When asked at the hearing as to what his future plans were, the plaintiff stated, in effect, that his immediate future plans were to do construction work in New Hampshire, particularly in Dover and Portsmouth, and had definite jobs in the offing. He had applied for a job as the manager of an ice rink to be built in Dover, New Hampshire. The plaintiff also stated at the hearing that he was interested in getting a job teaching and coaching sports. He registered for a teaching position with the School Service Bureau of Windsor, Connecticut, and also made an application to Supervisory Union No. 56 which handles teaching positions in the Dover, Durham, Rollinsford, Lee, Madbury, and Somersworth areas of New Hampshire. The plaintiff filed teaching applications with a total of ten schools located in New Hampshire, Massachusetts, Connecticut, New Jersey, and New York. He indicated that he would be willing to take a job in a state other than New Hampshire if the job opportunity and the community were acceptable to him and his family.

After his graduation from Norwalk High School in Norwalk, Connecticut, the plaintiff was accepted as a student at six universities: the University of Connecticut, Boston University, Boston College, the University of Arizona at Tucson, St. Lawrence University, and the University of New Hampshire. One of the prime considerations for the plaintiff in selecting a university was the opportunity to play top-grade collegiate hockey. He was not interested in the University of Connecticut because its hockey team was not in the same class as those of the other schools. He finally decided to attend the University of New Hampshire because of its hockey program and because of its general curriculum and location. He played varsity hockey at the University of New Hampshire through part of his junior year and earned his letter. Another consideration for choosing the University of New Hampshire was that his parents would be able to see him play more frequently than if he went to a school a further distance away. The plaintiff did not have a scholarship.

The plaintiff's income consisted of money that he earned at various jobs and the rent of $140 a month that was paid to him by the tenants in the other half of the duplex owned by his father. His father paid other necessary living expenses and his tuition. His father claimed the plaintiff as a dependent on his federal income tax return. The plaintiff, of course, paid no rent to his father for that part of the duplex occupied by him and his wife. He stated at the hearing that his father bought the duplex because it was the cheapest way for him to live and it was also a good investment. The out-of-state tuition paid by the plaintiff's father came to $2,150 per year. This contrasts with a tuition of $900 per year for those classified as in-state students. His father also paid the car insurance on a 1969 Buick Skylark which the plaintiff purchased from his mother for one dollar. At the hearing, the plaintiff's attorney agreed that his father contributed more than one-half of his son's support while he was attending the University of New Hampshire.

## THE LAW

At the court hearing, the plaintiff's attorney stated, in response to a question from the court, that he was not challenging the constitutionality of the University's Rules governing tuition rates for in-state and out-of-state students. It was his position that the Rules had been applied in an unconstitutional manner. I note, however, that the complaint, specifically in paragraphs 5 and 6, does attack the constitutionality of the Rules and I, therefore, consider

both the validity of the Rules and the application of them by the University to these facts.

■ At the outset, I rule that this case does not involve one of the fundamental constitutional rights requiring that the defendant show "a compelling state interest" to justify its Rules. The test is whether or not the Rules have a rational relation to a legitimate state interest. Kelm v. Carlson, 473 F.2d 1267, 1271 (6th Cir. 1973); Starns v. Malkerson, 326 F.Supp. 234, 238 (D.Minn. 1970), aff'd. 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971).

■ The basic Rule provides:

All students attending any division of the University of New Hampshire in any capacity shall be charged tuition at a rate to be determined by their domicile. Those domiciled within the State of New Hampshire shall pay the in-state rate. Those domiciled elsewhere shall pay the out-of-state rate. Exhibit 1–I.

The leading case in this field, of course, is Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973). In that case, the Supreme Court held unconstitutional a Connecticut statute providing that an unmarried student must be classified as an out-of-state student if his legal address for any part of the one year period immediately prior to his application for admission was outside of Connecticut and that a student living with his spouse be classified as out-of-state if his legal address at the time of his application for admission was outside of Connecticut. The basis of the Court's opinion was that the statute created permanent irrebuttable presumptions and, therefore, violated the due process clause of the Fourteenth Amendment. The Court pointed out:

Yet, under the State's statutory scheme, neither was permitted an op-

portunity to demonstrate the bona fides of her Connecticut residency for tuition purposes, and neither will ever have such an opportunity in the future so long as she remains a student. Vlandis v. Kline, supra, at 448, 93 S. Ct. at 2234.

No irrebuttable presumptions are created by the Rules governing tuition rates for the University of New Hampshire. The issue is to be determined on the basis of the student's domicile. Moreover, section IV of the Rules provides for review of student status:

Any student who is aggrieved by the decision of the Director of Admissions classifying him as an out-of-state student for tuition purposes may appeal to the Appeals Committee of the appropriate division on forms and in accordance with procedures which shall be made available to the students in the office of the Director of Admissions. The student shall have the right to present to the Appeals Committee such additional evidence as he may deem appropriate in processing his appeal, and shall have the right to appear in person and be heard.

The decision of the Appeals Committee shall be final unless the Board of Trustees in its discretion elects to review the record before the Committee. No evidence may be adduced or presented before the full Board of Trustees, but review shall be of the record only.[1] Exhibit 1–IV.

In Vlandis v. Kline, supra, the Supreme Court said:

We hold only that a permanent irrebuttable presumption of nonresidence —the means adopted by Connecticut to preserve that legitimate interest— is violative of the Due Process Clause, because it provides no opportunity for students who applied from out of State to demonstrate that they have

. New Hampshire law now provides for review by the Superior Court of an adverse decision of the University.

Any student in the university system who is aggrieved by a final determination of the university board of trustees or of any

subcommittee or agent of the board denying him in-state status for tuition purposes, may appeal to the superior court in the county in which the particular division of the university involved is located. NH RSA 187:29 III.

become bona fide Connecticut residents. Vlandis v. Kline, *supra,* at 453, 93 S.Ct. at 2237.

A careful review of the four pages of Rules leads to the conclusion that New Hampshire has adopted a reasonable standard for determining domicile and has given a student an opportunity to demonstrate the bona fides of New Hampshire residency.

■ It is true that the Rules do put a heavy burden on a student seeking to change from an out-of-state status to an in-state classification but, as was pointed out in Kelm v. Carlson, *supra,* it is not arbitrary or unreasonable to place a strong burden of proof as to change of residence on former out-of-state students. It is also to be noted that the New Hampshire Rules require only continuous domicile in the state for a period of six months prior to registration. In Kelm v. Carlson, *supra,* a one year residency requirement was upheld as it was in Starns v. Malkerson, *supra.*

■ The next issue is whether or not the University applied the Rules fairly or merely used them as a cover and subterfuge for what was essentially an arbitrary and discriminatory decision. The letter to the plaintiff from the Appeal Board sets forth in great detail the reasons for its decision. It must be remembered that I do not sit to determine *de novo* whether or not the plaintiff did establish a bona fide domicile in New Hampshire. The function of this court is to determine if the plaintiff's constitutional rights have been violated; whether the application of the Rules to the particular facts was reasonable or whether it was arbitrary and capricious. The Appeal Board found:

Based on all of the evidence presented to the Committee, the Committee finds that Mr. William Pelletreau's domicile is still in Connecticut, and that his only reason for being in the state of New Hampshire is to pursue his education at the University. Exhibit 3–(15).

This finding squarely meets the constitutional requirements as defined by the Supreme Court:

The State can establish such reasonable criteria for in-state status as to make virtually certain that students who are not, in fact, bona fide residents of the State, but who have come there solely for educational purposes, cannot take advantage of the in-state rates. Vlandis v. Kline, *supra,* 412 U.S. at 453–454, 93 S.Ct. at 2237.

The critical factor in the Board's decision was the fact that the plaintiff was supported in part by his father who was, and continues to be, domiciled in Norwalk, Connecticut.

Sections F and G of Rule VII endeavor to define the standards governing unemancipated students. G provides in part:

No person shall be deemed to be emancipated unless his parent, as defined in subparagraph A above, has entirely surrendered the right to the care, custody and earnings of such person and unless his parent is no longer under any legal obligation to support or maintain such person or, having supported and maintained such person even though under no legal obligation to do so, has ceased to support or maintain such person. Emancipation shall not be found unless all such tests are met.

The plaintiff stresses the fact that he was married while attending the University, and that marriage normally emancipates a minor. This is the general rule. But here, the meaning of emancipation is focused on how a person is being supported, not as to what rights and duties he has. The plaintiff's University education was directly dependent upon his father's support by way of payment for living expenses, tuition, and providing him and his wife with a place to live. The fact of the matter is that, even though the plaintiff was under the traditional tests legally emancipated, he continued to be dependent upon his father for his support and his education. Under the facts of this case and under

the requirements of section G of Rule VII, the plaintiff was not emancipated as defined by the University requirements for in-state student classification.

So also, the plaintiff did not meet the University requirements for domicile. It is true that the plaintiff was domiciled in New Hampshire as far as the payment of taxes, voting, and the registration and driving of his automobile were concerned. The plaintiff had acquired a New Hampshire domicile but because he did so solely and primarily for the purpose of attending the University, he was classified as an out-of-state student.

Under the University Rules and the facts in this case, an emancipated New Hampshire domiciliary has been classified as an out-of-state student for tuition purposes because part of his financial support came from a parent domiciled in another state. This may seem like a harsh result, and it is certainly semantically illogical, but I do not find it so arbitrary, unreasonable, or discriminatory as to violate the plaintiff's constitutional rights.

Judgment for the defendant.

So ordered.