*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0122P (6th Cir.)
File Name: 04a0122p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

JOSEPH A. BELL, et al.,
  *Plaintiffs-Appellants,*

  *v.*

CHRISTOPHER M. MARINKO,
et al.,
  *Defendants-Appellees.*

No. 02-4370

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 02-07204—James G. Carr, District Judge.

Argued: March 12, 2004

Decided and Filed: April 28, 2004

Before: MARTIN, CLAY, and CUDAHY, Circuit Judges.[*]

————————————

[*] The Honorable Richard D. Cudahy, Senior Circuit Judge of the United States Court of Appeals for the Seventh Circuit, sitting by designation.

————————————

## COUNSEL

**ARGUED:** Jack Gregg Haught, BENESCH, FRIEDLANDER, COPLAN & ARONOFF, Columbus, Ohio, for Appellants. Terry Griffith, OFFICE OF THE PROSECUTING ATTORNEY FOR THE COUNTY OF ERIE, CIVIL DIVISION, Sandusky, Ohio, Arthur James Marziale, Jr., OFFICE OF THE ATTORNEY GENERAL OF OHIO, Columbus, Ohio, for Appellees. **ON BRIEF:** Jack Gregg Haught, Mark D. Tucker, BENESCH, FRIEDLANDER, COPLAN & ARONOFF, Columbus, Ohio, for Appellants. Terry Griffith, Gary A. Lickfelt, OFFICE OF THE PROSECUTING ATTORNEY, Sandusky, Ohio, Arthur James Marziale, Jr., Elizabeth L. Schuster, OFFICE OF THE ATTORNEY GENERAL OF OHIO, Columbus, Ohio, Joan C. Szuberla, Teresa L. Grigsby, SPENGLER NATHANSON, Toledo, Ohio, for Appellees.

————————————

## OPINION

————————————

BOYCE F. MARTIN, JR., Circuit Judge. Joseph Bell and six other registered voters of the Kelley's Island voting precinct in Erie County, Ohio, whose qualifications to be registered in that precinct were challenged, appeal the district court's grant of summary judgment. We are asked to decide whether procedures of the Ohio Board of Elections contravene the National Voter Registration Act, 42 U.S.C. § 1973gg-6 (1993), or violate the equal protection clause of the Fourteenth Amendment to the United States Constitution. Because the Board's procedures are lawful under both provisions, we affirm.

## I

In February of 2002, certain residents of Kelley's Island, Erie County, Ohio, filed challenges to the registrations of nearly one hundred voters pursuant to section 3509.19 of the Ohio Revised Code, which allows registered voters to challenge the right of any person to vote. Among the challenged registrants were appellants Joseph Bell, Frederic Walcott, Keith Haig, Timothy Ahner, Kim Fresch, and Paul and Victoria Finnegan. Challenges to their registrations alleged that appellants were seasonal, rather than permanent, residents of Kelley's Island, and were therefore not qualified to vote in the Kelley's Island precinct.

Joseph Bell and the six other appellants instituted an action in district court seeking to enjoin the Board from considering the challenges. The complaint alleged that sections 3509.19-3509.21 of the Ohio Revised Code, which authorize the challenge hearings, are unlawful under the National Voter Registration Act, and that section 3503.02(D) of the Code-- which states that "[t]he place where the family of a married man or woman resides shall be considered to be his or her place of residence"--violates the equal protection clause.[1] In a partial judgment, the district court denied the request to enjoin the Board as to the six appellants, but issued an order restraining the Board from considering, as evidence of Bell's residence, statements that Bell's wife resides and votes in a precinct other than Kelley's Island. The district court found that such consideration may violate the equal protection clause.

---

[1] Specifically, appellants argued, as they do here, that sections 3509.19-3509.21 are unlawful to the extent that they allow the Board to:
1)   hold hearings regarding the residence of registered voters, which the Board is authorized to do under section 3501.11,
2)   compel the attendance and sworn testimony of registered voters,
3)   cancel a voter's registration if the voter refuses to answer certain questions regarding the voter's residence, and
4)   deny voters the right to vote in an election for federal office.

Subsequently, the Board held hearings on the challenges to the appellants' respective registrations. The hearings were devoted to investigating each appellant's residence, which section 3501.11 of the Ohio Revised Code directs the Board to examine. For that purpose, the hearings elicited such information as each appellant's driver's license address, employment history, time spent on Kelley's Island, and, except for Bell, the residence and voting precinct of each appellant's spouse. Based on the information provided at the hearings, the Board denied the challenge to Bell's registration. The Board was unable to come to a majority decision with regard to the Finnegans and so referred the challenge to the Secretary of State, who sustained the challenge to the Finnegans' registrations. With regard to the remaining appellants, the Board concluded that there was sufficient evidence to find that appellants' residences were not on Kelley's Island, and the Board sustained the challenges to their registrations.[2] Also, the record shows that section

---

[2] In addition to other factors, the Board determined residence qualifications based on the following evidence:

Walcott moved to the Island in 1995 after he retired, but retained his mainland Huron Township home. He has worked part-time for Island employers, and he estimates that he spends two hundred days a year on the Island. His car is registered in the Huron Township, and his driver's license lists his Huron Township address, where he also receives all of his mail. He and his wife spend time in the winter in Florida.

Haig lives on the Island about one hundred fifty days each year, including the summer. Otherwise, he lives with his family and teaches in Bowling Green, Wood County, Ohio. Haig and his wife file joint tax returns from Bowling Green, and his driver's license bears his Bowling Green address.

Ahner spends about eighty percent of his time in the summer and seventy percent in the winter at his mainland Sandusky, Ohio, address. He receives his mail there and his driver's license bears his Sandusky address.

The Finnegans live on Kelley's Island one hundred ninety-four days each year; otherwise, they live in Columbus, Franklin County, Ohio. Their driver's licenses list the Columbus address and they both work for the Franklin County school system.

Fresch owns a house in Sandusky, and he works throughout Ohio, but

3503.02(D) did not play a determinative role in the Board's collective decisionmaking.[3]

All seven appellants filed claims in district court for injunctive relief, arguing, among other things, that the Board's procedures violate the National Voter Registration Act and the equal protection clause. The district court dismissed Bell's claims as moot because the Board had denied the challenge to his eligibility. With regard to the six remaining appellants, the district court granted summary judgment in favor of the Board, concluding that its procedures do not violate either provision. In this timely appeal, appellants assert the same claims.

## II

### A.  Standard of Review

We review a district court's award of summary judgment *de novo*. *Shah v. Deaconess Hosp.*, 355 F.3d 496, 498 (6th Cir. 2004). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* at 498. In viewing the evidence, we draw all reasonable inferences in favor of the appellants, as non-moving parties. *Anderson v.*

---

not on Kelley's Island. His driver's license lists his Sandusky address, and he receives his mail there.

[3]In making these decisions, more than one Board member expressly denied reliance on or consideration of the residence and voting precinct of each appellant's spouse. While one Board member did state his intent to consider section 3503.02(D) in determining Walcott's eligibility, another member expressly declined to rely on the statute. Also, in determining Haig's eligibility, Board member Christopher Marinko expressly disclaimed any consideration of section 3503.02(D). In general, the Board did not rely conclusively on section 3503.02(D).

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

### B.  National Voter Registration Act

#### 1.  Ohio Voter Removal Procedures §§3505.19-3505.21

Appellants argue that the National Voter Registration Act sets forth the exclusive reasons for which a state may remove a voter from a voting precinct's list of registered voters. Appellants claim that the Board, when it considered challenges pursuant to sections 3505.19-3505.21 of the Ohio Revised Code, failed to justify the removal of appellants according to those reasons, and therefore violated the Act. This argument requires analysis of the effect of the Act on state voter registration processes, as well as its intended purpose with regard to voter removal.

We considered the application of the National Voter Registration Act in *Association of Community Organizations for Reform Now (ACORN) v. Miller*, 129 F.3d 833 (6th Cir. 1997). There, we stated that the right to vote has long been recognized as central to the protection and exercise of the other rights guaranteed in our society. *Id.* at 835. Nevertheless, many practical barriers remain that may inhibit the free exercise of this right. Among such barriers are restrictive or prohibitively inconvenient voter registration requirements that may discourage or prevent qualified voters from registering and participating in elections. In *Miller*, we found that the National Voter Registration Act is Congress's attempt to reinforce the right of qualified citizens to vote by reducing the restrictive nature of voter registration requirements and by setting limits on the removal of registrants from the voter registration rolls. *Id.*

Section 1973gg-6(a)(3) of the Act provides that the name of a registrant "may not be removed from the official list of eligible voters except" when the registrant requests such removal, when the registrant has been convicted of a crime,

or when he or she is mentally incapacitated. Also, section 1973gg-6(a)(4) allows for removal pursuant to a state program or activity "that makes a reasonable effort" to remove ineligible voters by reason of death or change of residence. Appellants argue that because none of these has occurred, their names may not be removed. We disagree.

In creating a list of justifications for removal, Congress did not intend to bar the removal of names from the official list of persons who were ineligible and improperly registered to vote in the first place. The National Voter Registration Act protects only "eligible" voters from unauthorized removal. *See* 42 U.S.C. §1973gg-6(a)(1) (seeking to "ensure that any *eligible* applicant is registered to vote in an election"); ID. at §1973gg-6(a)(3) (providing that "the name of a registrant may not be removed from the official list of *eligible* voters except" under specific circumstances) (emphases added). Eligible voters, at a minimum, are those who qualify as bona fide residents of the precinct in which they are registered or wish to register to vote. *See, e. g., Dunn v. Blumstein,* 405 U.S. 330, 343-44 (1972); *Evans v. Cornman*, 398 U.S. 419, 422 (1970); *Kramer v. Union Free Sch. Dist.*, 395 U.S. 621, 625 (1969); *Carrington v. Rash*, 380 U.S. 89, 91 (1965). Residence, as defined in section 3503.02(a) of the Ohio Revised Code, is that place "in which the person's habitation is fixed and to which, whenever the person is absent, the person has the intention of returning."

In this case, the Board investigated and examined the residence of each appellant through challenge hearings. Based on those examinations, the Board concluded that appellants were not residents of Kelley's Island and were therefore ineligible to vote in the Kelley's Island precinct. They were improperly registered in the first place, and as a result, the voting rolls were inaccurate. As instructed by the National Voter Registration Act, the Board necessarily removed their names from the rolls. *See* 42 U.S.C. §§1973gg-6(a)(3)-(4) ("The purposes of this subchapter are . . . (3) to protect the integrity of the electoral process, and (4) to ensure

that accurate and current voter registration rolls are maintained.").

Were we to find that the Board's removal of these voters does violate the Act, we would effectively grant, and then protect, the franchise of persons not eligible to vote. Because the Act does not bar the Board's continuing consideration of a voter's residence, and instead encourages the Board to maintain accurate and reliable voting rolls, we find that the Board's procedures in this case do not contravene the National Voter Registration Act.

### 2. Ohio Revised Code § 3503.02(D)

Section 3503.02(D) of the Ohio Revised Code states that the place where the family of a married man or woman resides shall be considered to be his or her place of residence. Appellants argue that this section violates the National Voter Registration Act's requirement under section 1973gg-6(b)(1) that state programs to protect the integrity of the electoral process, such as hearings on challenges to a voter's registration, "shall" be "uniform" and "nondiscriminatory." Specifically, appellants argue that consideration of the residence and voting precinct of a voter's spouse, when such consideration would not be made with respect to a nonmarried or separated voter, is nonuniform and discriminatory, and therefore in violation of the Act. Again, we disagree.

Ohio is free to take reasonable steps, as have other states, to see that all applicants for registration to vote actually fulfill the requirement of bona fide residence. *See, e. g., Dunn,* 405 U.S. at 343-44; *Evans*, 398 U.S. at 422; *Kramer*, 395 U.S. at 625; *Carrington*, 380 U.S. at 91. Bona fide residence may be determined not only by an intention to reside at a fixed place, but also factors that express such an intent. *See Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 68 (1978). We find that these factors include the residence and voting precinct of a voter's spouse. To that end, consideration of the residence of a voter's spouse in determining the voter's residence is

relevant and appropriate. Therefore, section 3503.02(D) does not contravene the National Voter Registration Act.

## C. Equal Protection Clause

Similarly, appellants argue that section 3503.02(D) requires the Board to treat married voters differently than nonmarried voters, and therefore violates the equal protection clause. As stated, we find that such consideration, among other factors, is relevant and appropriate in determining the residence of a challenged voter. For purposes of equal protection, we now apply the rule that, absent an irrebuttable presumption that a voter's residence is that place where the voter's spouse resides, such consideration does not violate the equal protection clause. *See Carrington*, 380 U.S. at 91; *Kelm v. Carlson*, 473 F.2d 1267, 1270 (6th Cir. 1973).

The plain language of section 3503.02(D)—the place where the family of a married voter resides "shall" be considered the voter's residence—arguably creates some presumption of residence. We therefore look for guidance to decisions from the Supreme Court and our Court with regard to presumptions and equal protection.

The rule that an irrebuttable presumption may not be utilized to classify a person as a non-resident was applied in *Carrington*, in which the Supreme Court invalidated a section of the Texas Constitution that prohibited a member of the armed forces who first established his home in Texas during the course of his military service from satisfying the residence qualifications for a voter so long as he remained a member of the armed forces. *Id*. at 91-92. The Court stated: "'The presumption here created is definitely conclusive--incapable of being overcome by proof of the most positive character.'" *Id*. at 96 (quoting *Heiner v. Donnan*, 285 U.S. 312, 324 (1932)). The Court held that by prohibiting all servicemen not residents of Texas before induction to the armed services "ever to controvert the presumption of nonresidence, the Texas Constitution imposes an invidious discrimination in

violation of the Fourteenth Amendment." *Id*. Other courts have subsequently noted that "[t]he determining factor [in *Carrington*] was the conclusiveness of the presumption." *See Whatley v. Clark*, 482 F.2d 1230, 1234 (5th Cir. 1973); *see also Kelm*, 473 F.2d at 1270.

This Court has also considered the irrebuttable presumption as applied to the determination of residence. In *Kelm*, we struck down an Ohio statute that required graduate students to have taken a job in Ohio prior to enrolling in graduate school in order to gain Ohio residency and pay the in-state tuition fee. 473 F.2d at 1270. We found that the condition acted as an impassable barrier to many students who in good faith intend to and, for all other purposes, have succeeded in establishing residency in Ohio, and therefore violated the equal protection clause. *Id*.

Following this guidance, we must determine whether the challenged provision raises an irrebuttable presumption. Although the record shows that the Board did accept into evidence the residence and voting precinct of each appellant's spouse, it also shows, as indicated above, that no appellant was irrebuttably presumed to reside at the residence of his or her spouse. Indeed, other evidence was presented and expressly relied upon by the majority of Board members. Because the Board did not raise an irrebutable presumption in applying section 3502.02(D), we find that appellants have suffered no equal protection violation.

## III.

For the foregoing reasons, we AFFIRM the judgment of the district court.