DECISION AND JUDGMENT ENTRY
{¶ 1} This matter is before the court on cross-motions for summary judgment filed by relator, John Eaton, and respondent, Erie County Board of Elections, with respect to relator's complaint for a writ of mandamus. In his August 19, 2005 complaint, relator sought a writ of mandamus ordering that respondent accept his voter registration and register him as a qualified elector in the Kelley's Island, Ohio, precinct. Respondent contends that a writ of mandamus is not an appropriate remedy because the relator has an adequate remedy at law. Respondent also argues that relator failed to exhaust his administrative remedies prior to commencing the action. On January 23, 2006, with leave of court, relator filed an amended complaint which included the claim that at the September 10, 2004 hearing on the challenge to relator's voter registration, respondent's deliberation in a private executive session was violative of the Ohio Open Meetings Act, R.C. 121.22, also known as the "Sunshine Law."
 {¶ 2} The facts of this case are as follows: Relator's status as a qualified elector of Kelley's Island was first challenged in February 2002, following his election to the office of Kelley's Island council. This challenge was ultimately dismissed; respondent finding that relator was a resident of Kelley's Island. In September 2003, respondent challenged relator's voter registration pursuant to R.C. 3505.19.
 {¶ 3} On September 10, 2004, respondent conducted a hearing, pursuant to R.C. 3501.11 and R.C. 3505.19, to determine whether relator and his wife were improperly registered as electors of the Kelley's Island precinct. Rita Eaton, relator's wife, conceded that she was a full-time resident of Monroe County, Florida, where she and relator own a second home. Mrs. Eaton also informed respondent that she had registered to vote in Florida; respondent then withdrew its challenge of Mrs. Eaton. The matter then proceeded to the challenge as to the qualifications of relator; relator testified on his own behalf. Following relator's testimony, respondent convened into a private executive session; thereafter, respondent returned to the hearing and voted, three to one, to uphold the challenge.
 {¶ 4} On September 21, 2004, relator commenced an action in the Erie County Court of Common Pleas seeking to enjoin respondent from enforcing its September 10, 2004 decision finding that relator was inappropriately registered. Relator also challenged the constitutionality of R.C. 3503.02(D), which states that where a person's family resides is determinative of his or her residence. On October 29, 2004, journalized on November 19, 2004, the trial court dismissed the action finding that relator failed to file the security required for injunctive relief and that the act requested to be enjoined had already been completed. The court further found that the court lacked subject matter jurisdiction over the constitutional challenge because relator failed to serve the Ohio Attorney General's office with a copy of the complaint as required under R.C. 2721.12.
 {¶ 5} Thereafter, on March 11, 2005, relator filed a new voter registration card. On April 29, 2005, relator was notified by respondent that it rejected his registration and requested evidence as to "what had changed since [relator was] previously denied registration."
 {¶ 6} Relator commenced the instant action on August 19, 2005, requesting that this court order respondent to re-register relator as a qualified elector of the Kelley's Island precinct. Following the denial of respondent's motion to dismiss, respondent filed its answer on October 5, 2005, asserting several affirmative defenses including that relator had an adequate remedy at law and that relator failed to exhaust his administrative remedies.
 {¶ 7} On November 3, 2005, respondent filed its motion for summary judgment arguing that relator failed to meet his burden of proof to demonstrate that he is a qualified elector, relator has an adequate remedy at law, respondent has no clear legal duty to place relator on the precinct roll, and that mandamus is not an appropriate remedy in the absence of fraud, corruption, or an abuse of discretion. Conversely, in his November 4, 2005 motion for summary judgment relator contends that he has a clear legal right to be registered as a qualified elector in the Kelley's Island precinct and, thus, respondent has a corresponding duty to register him as such. Relator also argues that respondent's cancellation of this registration was invalid due to the deliberations held in an unauthorized executive session. Finally, relator asserts that he has no adequate remedy at law to provide him with relief in "exercising his statutory and constitutional right to vote as a qualified elector in the precinct of his residency." The parties have filed memoranda in opposition to the respective summary judgment motions as well as reply memoranda.
 {¶ 8} At the outset we note that summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Harlessv. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C). The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. Dresher v. Burt, 75 Ohio St.3d 280, 294, 1996-Ohio-107. However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E).
 {¶ 9} We further note that "[t]he standard for reviewing a decision of a board of elections is whether the board engaged in fraud, corruption, abuse of discretion, or clear disregard of statutes or applicable legal provisions." State ex rel. Carr v.Cuyahoga Cty. Bd. of Elections (1992), 63 Ohio St.3d 136, 138.
 {¶ 10} A writ of mandamus is an extraordinary remedy. To be entitled to a writ of mandamus, a relator must establish a clear legal right to the relief requested, a clear legal duty to perform the requested act on the part of the respondent, and that the relator has no plain and adequate remedy at law. State exrel. Crabtree v. Ohio Bur. of Workers' Comp. (1994),71 Ohio St.3d 504, 510. See R.C. 2731.05.
 {¶ 11} As set forth above, the issues before us include: whether relator has a clear legal right to be registered as a qualified elector in the Kelley's Island precinct; whether respondent has a clear legal duty to register relator; and, finally, whether relator has no adequate remedy at law. Relator contends that he has been a resident of Kelley's Island for the past 20 years and, despite the fact that his wife is now a Florida resident, he still considers Kelley's Island his permanent residence.
 {¶ 12} R.C. 3503.01 provides:
 {¶ 13} "Every citizen of the United States who is of the age of eighteen years or over and who has been a resident of the state thirty days immediately preceding the election at which the citizen offers to vote, is a resident of the county and precinct in which the citizen offers to vote, and has been registered to vote for thirty days, has the qualifications of an elector and may vote at all elections in the precinct in which the citizen resides."
 {¶ 14} The rules for determining residence are set forth in R.C. 3503.02 which provides, in part:
 {¶ 15} "All registrars and judges of elections, in determining the residence of a person offering to register or vote, shall be governed by the following rules:
 {¶ 16} "(A) That place shall be considered the residence of a person in which the person's habitation is fixed and to which, whenever the person is absent, the person has the intention of returning.
 {¶ 17} "(B) A person shall not be considered to have lost the person's residence who leaves the person's home and goes into another state or county of this state, for temporary purposes only, with the intention of returning.
 {¶ 18} "* * *.
 {¶ 19} "(D) The place where the family of a married man or woman resides shall be considered to be his or her place of residence; except that when the husband and wife have separated and live apart, the place where he or she resides the length of time required to entitle a person to vote shall be considered to be his or her place of residence."
 {¶ 20} At the September 10, 2004 hearing on the challenge to relator's voter registration, relator testified as follows:
 {¶ 21} "Q: Okay. During the period from June 2003 through this date, how many days would you estimate that you have spent on Kelley's Island?
 {¶ 22} "A: I would say probably on or about 200 days.
 {¶ 23} "Q: Okay. Could give me an idea when those days were spent, not day by day obviously, but in periods of time that you were on the island, by month perhaps?
 {¶ 24} "A: Well, normally I'm on the island from Thursday until Tuesday. And I normally go to Columbus for a couple of days a week.
 {¶ 25} "Q: Okay. In the period of time from probably August or late August through May or June, where do you primarily reside?
 {¶ 26} "A: Kelley's Island, Ohio.
 {¶ 27} "Q: Are you in down Florida at any point?
 {¶ 28} "A: Of course.
 {¶ 29} "Q: Okay. Could you tell me what your travel schedule is to go to Florida and how that works?
 {¶ 30} "A: I don't have a fixed schedule. I go intermittently, and I come back for council meetings and spend a week or two every month I come back here."
 {¶ 31} "Q: So would you say three weeks approximately of every month from September through May is spent in Tarpon [Florida]?
 {¶ 32} "A: No. I would say three weeks of every month after January.
 {¶ 33} "Q: Okay. And before that?
 {¶ 34} "A: Kelley's Island, Ohio.
 {¶ 35} "Q: And in December and November of 2003 were you down in Florida at all?
 {¶ 36} "A: Of course.
 {¶ 37} "Q: Okay. And what period were you down in Florida?
 {¶ 38} "A: I don't recall.
 {¶ 39} "Q: How about October of 2003.
 {¶ 40} "A: I was in Florida in October.
 {¶ 41} "Q: Less than three weeks for the month?
 {¶ 42} "A: Yes, less than three weeks.
 {¶ 43} "* * *.
 {¶ 44} "Q: [W]ould it be fair to say that from January through April of 2003 and 2004, you also spent the majority of the time in Florida?
 {¶ 45} "A: What do you mean by a majority of the time?
 {¶ 46} "Q: More than half?
 {¶ 47} "A: No.
 {¶ 48} "Q: You just testified that from January on you spent about three weeks in Florida every month. Which is it?
 {¶ 49} "A: More than half of what?
 {¶ 50} "Q: Of a month.
 {¶ 51} "A: In January and February?
 {¶ 52} "Q: March and April.
 {¶ 53} "A: No. That's not correct. Not more than half.
 {¶ 54} "Q: Okay.
 {¶ 55} "A: I said normally in January and February. March and April, I'm probably half and half. I have no idea, I don't keep records that closely."
 {¶ 56} Relator also testified that he has a Kelley's Island mailing address, and that the Kelley's Island address is on his state and federal income tax returns. Relator also testified that he believed that the address on his personal automobile registration was Kelley's Island since it had been on Kelley's Island for ten years. Relator stated that he reported no earnings in Florida.
 {¶ 57} At the conclusion of relator's testimony, the respondent board moved to convene to a private executive session to confer with the prosecutor. After returning to the hearing, the respondent board voted to uphold the challenge to relator's voter registration. Specifically, the board stated:
 {¶ 58} "[T]he board finds that there is conflicting evidence and testimony. We have considered the operation of an application of 3502(D) of the Ohio Revised Code and looking at the authority of the Bell case from the Sixth Circuit, consider it as evidence, rather consider the application and residency of the spouses as evidence, but not as dispositive of the Board's finding, and finally state that the Board can make no determination whether or not someone can be registered in the state of Florida. We can only make the determination as to whether or not a person is appropriately registered in the precinct. And our inquiry can go no farther than that under Ohio law."
 {¶ 59} In Bell v. Marinko (C.A.6 2004), 367 F.3d 588, the Sixth Circuit case referenced by the respondent board, the court examined whether R.C. 3503.02(D) violated the National Voter Registration Act[1] and/or the Equal Protection Clause. As to the National Voter Registration Act's requirement that hearings on challenges be uniform and nondiscriminatory, the court found that the consideration of the residence and voting precinct of a voter's spouse is an appropriate factor to consider in furtherance of a state's goal to see that all applicants fulfill the residency requirement. Id. at 592-593.
 {¶ 60} Regarding the equal protection challenge, the Bell
court acknowledged that the word "shall" as used in R.C.3503.02(D) arguably created some sort of presumption of residence; however, the court concluded that "absent an irrebuttable presumption that a voter's residence is that place where the voter's spouse resides, such consideration does not violate the equal protection clause." Id. 593.
 {¶ 61} Relator cites Cox v. Village of Union City (1948),84 Ohio App. 279, for the proposition that the phrase "separated and live apart" should be broadly interpreted. In Cox, the husband/elector remained in Ohio while, due to a housing shortage, his family was compelled to move to Indiana. The court interpreted the statute to not burden the board of elections with an inquiry into the health of an individual's marriage; rather, the court concluded that "[i]f the husband actually lives separate and apart from his wife, he may acquire at the actual place of living a residence for voting purposes under the provisions of the statute." Id. at 282.
 {¶ 62} While we agree with Cox's basic principle, in the present case, after careful review of the September 10, 2004 hearing transcript and the affidavits and additional evidence presented by the parties,[2] we must find that respondent did not abuse its discretion when it upheld the challenge to relator's voter registration. Relator had the burden of establishing a clear legal right to be qualified as an elector; we find that relator failed to do so.
 {¶ 63} In relator's amended complaint for a writ of mandamus, he further contends that during the September 10, 2004 hearing, respondent's act of deliberating in a private executive session was violative of the Ohio Open Meetings Act, R.C. 121.22, or the "Sunshine Law." Appellee argues that because respondent was acting in a quasi-judicial capacity, it was not required to comply with R.C. 121.22.
 {¶ 64} R.C. 121.22(A) provides that the section "shall be liberally construed to require public officials to take official action and to conduct all deliberations upon official business only in open meetings unless the subject matter is specifically excepted by law." R.C. 121.22(B)(2) defines "meeting" as "any prearranged discussion of the public business of the public body by a majority of its members."
 {¶ 65} In TBC Westlake, Inc. v. Hamilton Cty. Bd. ofRevision (1998), 81 Ohio St.3d 58, the Supreme Court of Ohio noted that the essential difference between a quasi-judicial proceeding and a meeting subject to R.C. 121.22 is that a quasi-judicial proceeding involves the exercise of discretion. Id. at 62. The court stated: "[I]n deciding whether an act by an administrative agency is quasi-judicial, the `* * * most common test is to determine whether the function under consideration involves the exercise of discretion and requires notice and hearing,' all elements required to constitute a quasi-judicial act." Id., quoting Englewood v. Daily (1965), 158 Colo. 356,361, 407 P.2d 325, 327.
 {¶ 66} Under R.C. 3501.11(Q), respondent is required to "[i]nvestigate and determine the residence qualifications of electors." R.C. 3505.19 provides that any person registered as an elector may be challenged by any qualified elector. If an elector is challenged, a public hearing, of which both the challenger and challenged are notified, must be held. At the hearing, the challenged individual may "testify, call witnesses, and be represented by counsel." R.C. 3503.24. Following such hearing "[i]f the board decides that any such person is not entitled to have the person's name on the registration list" the challenged elector is removed from the precinct rolls. Id.
 {¶ 67} Upon review of the relevant statutory and case law, we must conclude that the September 10, 2004 hearing conducted on the challenge to relator's elector status was a quasi-judicial proceeding. Respondent was required to weigh the evidence in order to determine whether relator was, in fact, a resident of the Kelley's Island precinct. Accordingly, respondent was not required to comply with R.C. 121.22.[3]
 {¶ 68} In conclusion, although we recognize the significance of relator's constitutional right to vote, we find troubling the fact that relator waited eleven months from respondent's September 10, 2004 decision to uphold the challenge, and just days prior to the deadline for filing for reelection, to file a complaint for a writ of mandamus in this court. Further, relator failed to either appeal from the trial court's dismissal of his action or cure the defects cited by the court. Finally, following his March 29, 2005 attempt to re-register, relator failed to respond to respondent's April 29, 2005 request for additional information. Had relator proceeded expeditiously, the ordinary course of law may have provided the relief sought. Relator cannot be the cause for the delay from which he now seeks immediate relief. Prior to again seeking relief in this or any court, relator must respond to respondent's request for additional information.
 {¶ 69} Based on the foregoing, we find that respondent's motion for summary judgment is well-taken and granted, and that relator's motion for summary judgment is not well-taken and denied. Relator's complaint for a writ of mandamus is dismissed. Relator is ordered to pay the costs in this matter.
WRIT DENIED.
Handwork, J., Pietrykowski, J., Parish, J., concur.
[1] The National Voter Registration Act's stated purposes include: (1) the establishment of procedures to increase the number of registered voters; (2) to enhance the participation of citizens as voters; (3) to protect the integrity of the electoral process; and (4) to ensure the accuracy of voter registration rolls. 42 U.S.C.A. 1973gg(b)(1)-(4).
[2] We note that relator has requested that respondent's Exhibits F and G be stricken from the record because they are not verified. Exhibit F is an excerpt from the "Election Official Manual for Ohio County Boards of Election;" and Exhibit G is a letter presumably from respondent's counsel to relator's counsel. We agree with relator that because the exhibits are not verified, they are not proper Civ.R. 56(C) evidence and will not be considered.
[3] We do note, however, that it would appear that respondent did, in fact, conform based upon the exception set forth in R.C.121.22(G)(3) which permits a public body to hold an executive session to confer with counsel where litigation is pending or imminent.